HALE v. WHARTON et al.

TOLEDO CONSOL. ST. RY. CO. v. SAME.

(Circuit Court, W. D. Missouri, W. D. April 27, 1896.)

SERVICE OF PROCESS—EXEMPTION OF SUITORS.

One W., a citizen and resident of Pennsylvania, was plaintiff in a suit pending in a federal court in Missouri against a Missouri corporation. Pursuant to the advice of his counsel that his presence was necessary, W. went to Missouri to attend the trial of the case. On the day for which the case was set down for hearing, it was adjourned one day, on account

of the illness of defendant's counsel, and as W. was leaving the court-house a summons was served upon him in a suit instituted against him, in a state court, by a citizen of Illinois, through the same attorneys who appeared for the defendant in W.'s suit. Another summons in the same case was served upon him later in the day, at his hotel. W. removed the case into the federal court, appearing specially for that purpose, and moved to set aside the service of the summons on the ground that he was exempt from such service. *Held*, that the service should be set aside, notwithstanding the courts of Missouri hold service made under similar circumstances to be good.

Lathrop, Morrow, Fox & Moore, for plaintiffs.

Gage, Ladd & Small, for defendants.

Before. ADAMS and PHILIPS, District Judges.

PHILIPS, District Judge. As the above-entitled cases present the same issues, they will be considered and determined together.

On the 12th day of December, 1895, the above-named defendants, resident citizens of the state of Pennsylvania, had pending in this court a suit at law against the Grand Avenue Hotel Company, a Missouri corporation, resident of this district. The defendant Wharton had come here in response to a letter from his counsel advising him of the importance of his presence at the trial of said cause. The cause was set down for trial on the 12th day of December, 1895, but on account of the indisposition of counsel for defendants the trial was postponed one day. Just as the defendant Wharton was leaving the court room on said 12th day of December, 1895, he was served within this building, by the sheriff, with a summons at the suit of plaintiffs, instituted at that time in the state circuit court of Jackson county against said defendants, as partners. Apprehensive that a question possibly might arise as to the legality of a service made within the federal building, on the territory of the United States, plaintiff caused another summons to be served on defendant the same day, at his hotel, in this city. The attorneys for the plaintiff are the same as those of the Grand Avenue Hotel Company in its said suit. On the return day of said writs the defendant Wharton appeared in said court, as expressed in the motion, solely for the purpose of applying for the removal of said cases into this court. The removal was accordingly made, and the defendant has moved here to set aside and vacate the said returns of service, on the ground that he was exempt from such process under the foregoing state of facts. This is the question to be decided.

It is, perhaps, not too much to say that no rule of practice is more firmly rooted in the jurisprudence of United States courts than that of the exemption of persons from the writ of arrest and of summons while attending upon courts of justice, either as witnesses or suitors. Parker v. Hotchkiss, 1 Wall. Jr. 269, Fed. Cas. No. 10,739; Bank v. McSpedan, 5 Biss. 64, Fed. Cas. No. 7,582; Bridges v. Sheldon, 7 Fed. 42; Plimpton v. Winslow, 9 Fed. 365; Larned v. Griffin, 12 Fed. 590; Small v. Montgomery, 23 Fed. 707; Atchison v. Morris, 11 Fed. 582; Nichols v. Horton, 14 Fed. 329; Lyell v. Goodwin, 4 McLean, 39, Fed. Cas. No. 8,616; Kinne v. Lant, 68 Fed. 436. The rule in the English courts at first was limited to exemption from arrest in a

criminal proceeding, and as arrest for debt obtained in practice there, as in some of the American states, the rule was extended to process in indebitatus assumpsit. Law is a progressive science, and, in its struggle to reach the highest ideal of practical justice, its principles, in the development of civilized society, are constantly being extended to meet the demands of an everincreasing, refining sense of justice. The exemption from criminal process of witnesses while attending court was predicated of the assumption, first, that it was calculated to disturb and divert the witness so that on the witness stand his mind might not possess that repose and equipoise essential to a full and true deliverance of his testimony. It was therefore, on principle, extended to civil process against him. Next in the natural order of development the rule was extended to suitors coming from foreign jurisdictions to attend upon the trial of their causes, for the reason that they "might be deterred from the fearless assertion of a claim, or rightful or fearless assertion of a defense, if they were liable to visits on the instant with writs from the defeated party." As said by Judge Shiras in Nichols v. Horton, 14 Fed. 330:

"Experience has shown that in order that causes may be fully heard, and the orderly administration of justice may be assured, it is necessary that parties, witnesses, and jurors shall be protected from service of process in civil actions while they are, in good faith, in attendance upon the trial of causes. If parties or witnesses are liable to be sued when in attendance upon the court in which the cause with which they are connected is pending, and by reason thereof they may be compelled to appear and answer in a foreign tribunal, or in one different and far distant from that wherein they could alone have been sued, had they not been in attendance upon the court, the fear thereof might well deter them from attending at the place of trial; and, if they were beyond the reach of a subpoena, a party might, as a consequence, be deprived of the personal presence and testimony of witnesses whose absence would be fatal to his cause."

A like rule obtains in a great majority of the states of the Union, only a few of which we here cite: Bank v. Ames, 39 Minn. 179, 39 N. W. 308; Thompson's Case, 122 Mass. 428; Person v. Grier, 66 N. Y. 124; Matthews v. Tufts, 87 N. Y. 568; Halsey v. Stewart, 4 N. J. Law, 367; In re Healey, 53 Vt. 694; People v. Judge of Superior Ct., 40 Mich. 729; Mitchell v. Circuit Judge, 53 Mich. 541, 19 N. W. 176; Massey v. Colville, 45 N. J. Law, 119; Miles v. McCullough, 1 Bin. 76; Hayes v. Shields, 2 Yeates, 222; U. S. v. Edme, 9 Serg. & R. 147; Andrews v. Lembeck, 46 Ohio St. 38, 18 N. E. 483; Henegar v. Spangler, 29 Ga. 217; Ballinger v. Elliott, 72 N. C. 596. This rule is buttressed with the high conception that as courts are established for the ascertainment of the whole truth, and the doing of exact justice, as far as human judgment can attain, in disputes between litigants, every extraneous influence which tends to interfere with or obstruct the trial for the attainment of this sublime end should be resisted by the ministers of justice to the last legitimate extremity in the exercise of judicial power. Hence, as "one of the necessities of the administration of justice" (Person v. Grier, 66 N. Y. 124), the rule has come to be regarded as the privilege of the court, as affecting its dignity and authority, and rests, therefore, upon sound public policy. Parker v. Hotchkiss, supra, ap-

proved by Justice Grier and Chief Justice Taney; Bank v. McSpedan,
supra; Lyell v. Goodwin, supra; Huddeson v. Prizer, 9 Phila. 65;
and authorities supra. Southard, J., in Halsey v. Stewart, 4 N. J.
Law, 367, has pungently expressed this principle:

"Courts of justice ought everywhere to be open, accessible, free from interruption, and to cast a perfect protection around every man who necessarily approaches them. The citizen, in every claim of right which he exhibits, and every defense which he is obliged to make, should be permitted to approach them, not only without subjecting himself to evil, but even free from the fear of molestation or hindrance. * * * Now, this great object in the administration of justice would, in a variety of ways, be obstructed, if parties and witnesses were liable to be served with process while actually attending court. It is often matter of great importance to the citizen to prevent the institution and prosecution of a suit in any court at a distance from his home and his means of defense, and the fear that a suit may be commenced there by summons will as effectually prevent his approach as if a capias might be served upon him. This is especially the case with citizens of neighboring states, to whom the power which the court possesses of compelling attendance cannot reach. Take the case of the present defendant. He doubtless knew of the plaintiff's claim, and was unwilling to have it tried out of his own state. Had his attendance as a witness been absolutely necessary, would he have come, unless this privilege were thrown around him? Surely not. Either, then, injustice must have been done, or the progress of the court interrupted. Such consequences should be guarded against. Whether a man wishes to attend the court as a party or witness, he should be able to do it under its protection. This privilege of parties and witnesses is alike the privilege of the court and the citizen. It protects the court from interruption and delay. It takes away a strong inducement to disobey its process, and enables the citizen to prosecute his rights without molestation, and procure the attendance of such as are necessary for their defense and support."

It may be conceded, to plaintiffs' contention, that, in most of the reported cases supporting the rule in question, it was where the party complaining of the service of process was a defendant suitor, who had been brought from out of his state to defend suit against him. But, on principle, I am unable to perceive any distinction in the privilege, both of the suitor and the court, between a plaintiff and defendant,—especially so when applied to the facts of this case. The Grand Avenue Hotel Company was a Missouri corporation, domiciled at Kansas City. The plaintiff, Wharton, was compelled to come into this jurisdiction to enforce his claim against the corporation. He had no choice as to the forum. Being both a suitor and a competent witness in the cause, he had to come here to properly protect his interests, in the judgment of his counsel. Nor are these plaintiffs in position to invoke any special equity predicated of mere case law. They are not even in the position of plaintiffs who "found" the defendant by chance in the forum of their domicile. But they are citizens of the state of Illinois, who come out of their own home jurisdiction, under no necessity to do so, with full knowledge, through their attorneys, of the circumstances under which Wharton was in this jurisdiction, and instituted this suit, as if their purpose was to catch the defendant away from his home.

Our jurisdictional system is based, sub modo, on the theory that a defendant is an unwilling party to any litigious strife. And in recognition of the privileges and rights of the home, the immunities and safeguards with which the good citizen, by his honorable con-

duct and high character, has surrounded himself in his business and domestic relations, he is entitled to trial by a tribunal of the vicinage. This is as ancient and valuable as the behests of the Magna Charta. The federal judiciary act of 1887 recognizes this by exempting the citizen from suit outside of the district in which he lives. The state statutes, as a rule, require suits to be instituted in the county of the defendant's residence. And every attempt by legislative bodies, and by construction, to encroach upon this high privilege, should be treated with jealousy, and scrupulously guarded. Legislatures and courts lose sight of a great underlying principle of personal liberty as often as they attempt to enlarge the operation of writs by which it is sought to break in upon the sanctuary of the home, and the valuable privileges with which the noblest aspirations of organized civil life have invested it, or to permit process to be used so as to be abused within the very precincts where justice is being administered.

We are confronted, however, with the fact that the supreme court of this state has held that a nonresident defendant, under circumstances like these at bar, is not exempt from process, at the suit of even a nonresident plaintiff, while attending upon the trial of a cause in this state. The first of these state decisions was in Christian v. Williams, 111 Mo. 429, 20 S. W. 96. The defendant, a resident of Randolph county, while attending court in the city of St. Louis, as a defendant, at the suit of C. and S., was served with a writ of summons at the suit of the plaintiff, Christian. The statute (section 2009) provides that:

"Suits instituted by summons shall, except as otherwise provided by law, be brought: First, when the defendant is a resident of the state, either within the county in which the defendant resides, or in the county within which the plaintiff resides, and the defendant may be found."

The suit was brought in the county of the plaintiff's residence, and where the defendant was found. He was held amenable to the process, notwithstanding he was called into the county as a defendant in another suit, and notwithstanding he was caught there as an unwilling suitor. It is observable, from reading the opinion, that the learned judge was so impressed with the overwhelming weight of authority against such catching of a defendant out of his county that he sought to limit the authority of the rule to the instance where a nonresident of the state was thus served while attending court as a suitor or witness in the local forum. But as the true ground on which the rule of exemption is bottomed, as shown in this opinion, obliterates all attempted distinction between nonresidents of the state and nonresidents of the county, he ultimately fell back upon the mere words of the statute prescribing the manner and place of service of such writs. The truth is, it is apparent from the whole trend of the discussion by Judge Sherwood, both in this and in Baisley v. Baisley, 113 Mo. 544, 21 S. W. 29, that the inclination of his mind was against the adoption of the doctrine as maintained by the federal courts, and by the great majority of the state courts; and, to accomplish its rejection, he invoked the statutory prescription as to the mode and manner of serving writs of summons

in personam, without attempting to maintain, by argument or authority, that it was ever in the mind of the legislature, in framing this statute, to cut off the power of the courts of common-law jurisdiction to recall such writs, or vacate the return thereon, if fraudulently issued or used so as to obstruct the due administration of justice. The statute in question has been in force at least since 1835 in this state, and it never had any other office or design than to merely prescribe the manner and place of serving ordinary writs of summons; leaving the service, when made, subject to attack in the court of jurisdiction for any vice affecting its integrity, arising in pais, outside of the face of the writ itself. Having broken through thus far the barriers which a sound public policy had erected around the due administration of justice, it became easy to advance a step further, and apply the statute to the instance where both plaintiff and defendant were nonresidents of the state, as was done in Baisley v. Baisley, 113 Mo. 544, 21 S. W. 29. There both parties were residents of the state of Oregon. The plaintiff had brought suit in attachment against the defendant in Chariton county. While attending court in that litigation, defendant in that suit brought an action of libel against the plaintiff in Chariton county. It presented an extreme case, where the court was greatly tempted, as expressed in its opinion, to hold that, if it was competent for the plaintiff in the attachment suit to recover a general judgment against the defendant, it ought not to be "improper and illegal for the plaintiff [defendant there] to recover a like judgment against him in the libel suit." This very aptly illustrates the force of the maxim that "hard cases are the quicksands of the law." The court based this ruling flatly on the language of the fourth clause of section 2009 of the state statutes (Rev. St. 1889): "When all the defendants are non-residents of the state, suit may be brought in any county in this state." With neither the purpose nor the disposition to review or criticise the opinion of the eminent judge, it is within reason to observe that a nonresident who has to follow the property of his debtor into another jurisdiction is compelled to adopt the forum of the situs of the property. He has no choice in selecting the field of contest. Therefore there was no occasion for the counter action for a libel, other than a purpose to recoup a judgment against him by a claim ex delicto against his adversary. And as, in the action of libel, the character, good or bad, of both parties, is more or less involved, the plaintiff should have been remitted to the home court, in Oregon, where the character of each litigant had been established and was best known. Giving, however, to these decisions, "full faith and credit," are they binding on this jurisdiction? Counsel for plaintiffs, recognizing the fact that the binding obligation of the state decision on this court is not predicable in this instance of a line of state decisions constituting a rule of property, and that the state and federal courts are so far distinct, and, in a sense, foreign jurisdictions, that, in the interpretation and construction of common-law rules and statutes affecting proceedings in court, each is entitled to the exercise of its own independent judgment, make the contention, first, that the mode of service pursued in this in-

stance being purely statutory, and inasmuch as the statute has received construction by the state court, the federal court administering justice in the state should conform thereto. It is argued, for instance, that, the state court having construed the word "found" as it occurs in the first clause of said section 2009, this court is bound thereby. The summons in this case was not served, however, under that clause, but under the fourth clause, which does not contain the word "found," unless it is to arise by implication. It is, however, inconceivable to my mind how any sort of technicality could arise as to the import of the word "found." There was no room for construction. The statute is plain enough. So that, independent of the question of exemption from the service of any process (had the requisite diverse citizenship existed), no question could arise as to the legality of the service, had the suit been instituted in this court. It seems to me to be wholly begging the question raised by this motion to say that the defendant was summoned as the letter of the statute directs, and therefore he is bound. The question here presented arises dehors the record of the return. It presents rather the case of an abuse of process,—of an improvident issuing of summons, under a state of facts which, if known to the court at the time, sound public policy requires that the process be not issued, or, if issued, recalled. The objection to the service exists in pais, arising outside of the statute, and superior to the mere words of the writ and the return thereon, which the court could not know until brought to its attention. If, as suggested by the state court, this plea is cut off simply because the mode of service pursued was according to the letter of the statute, the doctrine of exemption from process while attending court could never have had a birth nor a growth. Presumably, on the face of the service of summons in all the adjudicated cases out of which the doctrine in question sprung, it was conformable either to statutory prescription or rule of court directing the method of serving writs of summons. Strangely enough, after flatly placing the right to sue a defendant outside of his state and county, notwithstanding he was at the place of service as a suitor, on the mere words of the statute as to where service might be made, the learned judge, in Christian v. Williams, supra, said that he wanted it distinctly understood that his remarks did not apply to the case where the party sued was induced by fraud and misrepresentation, or under compulsion of criminal process, "to enter within the boundaries of a county other than that of his residence"; citing a number of state cases where it had been so ruled. Upon what does the exemption thus recognized rest, other than, as repeatedly stated in the decisions of that court, that "it was an abuse of process," and "that no rightful jurisdiction can be acquired by fraud and misrepresentation?" And that court said in Byler v. Jones, 79 Mo. 263:

"If the person so proceeded against brings it properly to the attention of the court assuming jurisdiction over him, as the defendant did in this case, the suit must be dismissed, after proof or admission of the fact."

This rule, thus recognized by the state court, is not based on any statute, or legislative exception, but springs from that inherent

power resident in every court exercising common-law jurisdiction, to prevent the abuse of process and the subversion of justice by unnecessary oppression. It is a suicidal contradiction, therefore, to say that the generally recognized exemption of a suitor by the courts from process while attending upon the trial of a cause outside of the jurisdiction of his domicile cannot arise because "the statute makes no exemptions, and we are not authorized to make any," and, in the next breath, say the court will vacate a service of process made under the same statute because it is an abuse of process to. inveigle a party from the county or state of his residence. There is no logical escape from the proposition that the same high end of orderly and dignified procedure, demanding noninterference with witnesses and suitors, and the abuse of process, applies equally to both instances. And when it is admitted, as it must be, that the state court, in vacating the service of process in the instance reserved in Christian v. Williams, acts on general principles of common-law jurisprudence, it is a confession that such and kindred matters of practice pertain to the domain of general jurisprudence, and therefore the federal court, though sitting in the same state, is entitled to its own independent judgment, and will apply its own rules of decision. It is a misconception, both of the law of comity and the scope of section 914, Rev. St. U. S., to say that "this court is concluded by the status which the decisions of the state supreme court gave to the defendant at the time application for removal was made. In Erstein v. Rothschild, 22 Fed. 61, it was sought to bind the federal court as to the effect of an attachment issued without an affidavit. The state court had ruled such attachment to be void. The United States court, however, applied to the question of practice its own independent judgment and construction. Mr. Justice Matthews, after quoting said section 914, observed—

"That the conformity required by said statute is 'as near as may be,' not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose. It devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as congress doubtless expected they would do, any subordinate provisions in such state statutes which, in their judgment, would unwisely incumber the administration of the law, or tend to defeat the ends of justice, in their tribunals. While the act of congress is, to a large extent, mandatory, it is also, to some extent, only directory and advisory. The act of congress, at any rate, does not require the adoption, with the local statutes, of the local interpretation which may have been put upon them, or which may, from time to time, be enforced. It must be held that the body of the local law thus adopted in the general must be construed in the courts of the United States in the light of their own system of jurisprudence, as defined by their own constitution as tribunals, and of other acts of congress on the same subject."

The court of appeals of this district entertains a like view. In O'Connell v. Reed, 5 C. C. A. 586, 56 Fed. 531, it was held by the court that, notwithstanding, under the practice of the state court, the petition, in its form, was bad, the federal court was not bound thereby. Judge Sanborn, inter alia, said:

"It may be conceded that it is the settled rule of the federal courts to adopt the construction given by the highest judicial tribunal of a state to its local statutes involving rules of property, and to its state constitution, and tax

or revenue laws, where that construction violates no provision of the federal constitution or of the federal laws."

After reviewing the cases in which the statute in question is applicable, he says:

"They are far from holding that the federal courts are bound to follow any construction of a statute or any practice established by a state court that would affect the jurisdiction of their courts, or hinder or incumber the administration of the law in any of their tribunals. * * * The courts of the United States are not subordinate to the courts of the states. They constitute an independent judiciary system, the judges of which do not derive their powers from the states. Nor can the legislation of the states, or the decisions of their courts, determine the limits of those powers, or prescribe the duties their exercise imposes. One of the objects of the establishment of the federal courts, with jurisdiction to determine controversies between citizens of different states, was to provide a tribunal in each state where the rights of citizens of other states might be determined, unaffected by any possible influence that friendship for, or acquaintance with, a resident defendant might sometimes have in the local courts of his county. It was not the purpose of the act conforming the pleadings and practice of the federal courts to those of the state courts to prevent, or even to hinder, the accomplishment of this, or any other object for which the federal courts were established. It was not the intention of congress to require, by the passage of this act of conformity, the adoption by the circuit courts of any rule of pleading, practice, or procedure enacted by the state statute, or announced by the decision of a state court, which would enlarge or restrict the jurisdiction of the federal courts, or prevent the wise administration of the law in the light of their own system of jurisprudence, as defined by their own constitution, as tribunals, and the acts of congress upon that subject. On the other hand, that act expressly reserves to the judges of those courts the right, and, we think, imposes upon them the duty, in the exercise of a wise judicial discretion, to reject any statute, practice, or decision that would have such an effect."

Following the principles of these rulings, the case of Railroad Co. v. Pinkney, 149 U. S. 194, 13 Sup. Ct. 859, brings us nearer still to the case in hand. By statute of the state of Texas, as construed by the court of appeals in that state, the appearance of a party solely for the purpose of objecting to the jurisdiction of the court, and an answer made by him to the merits after ineffectual motion to quash the return, amounts to a general appearance in the case. It was insisted on the part of the plaintiff that this construction of the state statute should control the United States court, sitting in Texas, as to a like appearance, but the supreme court said no. See, also, Sherry v. Navigation Co., 72 Fed. 565.

This brings us to the final contention of plaintiffs, which is that the defendant could have been proceeded against to final judgment in the state court, under the process served upon him, and that this court, on the removal of the cause, must take up the case precisely in the legal attitude it was when the order of removal was made. Abstractly, this is correct. But what was that attitude? The effect of the filing of the petition for removal was to arrest, eo instanti, the jurisdiction of the state court. Thereafter it had no power to determine any question connected with the case. It had not even attempted to pass on any question when the order of removal was made. The supreme court of the United States has repeatedly held that, where "the case is properly removed, the party removing it is

entitled to any advantage which the practice and jurisprudence of the federal court gives him"; and again:

"The sole object of the constitutional and statutory provisions conferring jurisdiction upon federal courts in behalf of aliens and citizens of other states is that they may seek a trial and decision in these courts of questions which they are unwilling to submit to the judgment of state tribunals." King v. Worthington, 104 U. S. 44; Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724; Bentlif v. Finance Corp., 44 Fed. 667.

Conclusively, I think, the supreme court has settled the final question adversely to plaintiffs' contention. In Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, the plaintiff, a citizen of the state of New York, brought suit in the state court against the Morning News, of New Haven, a Connecticut corporation. Service was had in the case upon the president of the nonresident corporation, temporarily found in the state of New York. Defendant appeared for the purpose only of the application for removal of the cause into the United States circuit court, where it was accordingly sent. Thereupon the defendant moved to quash the return of service of process. This service was made in conformity with the provisions of the state statute, the validity of which had been affirmed by the highest court of the state. It was insisted by the plaintiff that, after removal of the cause into the federal court, the latter court took up the case as and where it was before it left the state court, and therefore, as the defendant was properly brought into court, as held by the court of appeals of New York, and could have been proceeded against to final judgment, had the cause remained in the state court, the United States circuit court should conform thereto. This contention was overruled by the circuit court, and on error to the supreme court the ruling of the trial court was affirmed. It is true, as suggested by plaintiffs' counsel, that the question there was as to whether or not the state court acquired jurisdiction over the defendant, and that the case turned principally upon the question whether or not the form of process, and the mode of service thereunder, was other than mere constructive service; and as it was only constructive service, as distinguished from personal service, any judgment of the state court thereon would have had no extraterritorial force or recognition. But the language of the learned justice who delivered the opinion, and the very theory on which the court denied the contention of the plaintiff, effectually refute the contention here that because the defendant was in court, and subject to its jurisdiction to proceed to final judgment therein at the time of the removal, the United States circuit court, after removal, must hold the defendant to the status he occupied at the time of removal. Mr. Justice Gray observed:

"The court, the service of whose process is in question, and the court in which the effect of that service is to be determined, derive their jurisdiction and authority from different governments. For the same reason, service of mesne process from a court of a state, not made upon a defendant or his authorized agent within the state, although there made in some other manner recognized as valid by its legislative acts and judicial decisions, can be allowed no validity in the circuit court of the United States after the removal of the cause into that court. * * * Although the suit must be actually pending in the state court before it can be removed, its removal into the circuit court of the United States does not admit that it was rightfully pend-

ing in the state court, or that the defendant could have been compelled to answer therein, but enables the defendant to avail himself, in the circuit court of the United States, 'of any and every defense duly and seasonably reserved and pleaded to the action, in the same manner as if it had been originally commenced in the said circuit court."

It is manifest from the whole trend of the discussion that Mr. Justice Gray maintains the broader doctrine that from the instant of filing the application, with the necessary bond, for removal of the cause, when such application is seasonably made, the jurisdiction of the state court ceases, both as to the parties and the subject-matter, and that of the federal court attaches, and thereafter, according to the plain language of the act of 1888, "the cause shall then proceed in the same manner as if it had been originally commenced in said circuit court." In other words, no matter what the effect of the process and service may have been, had the case remained in the state court, after its removal into the United States court the rightfulness and justice of that acquired jurisdiction, as well as its binding effect, being raised in the latter court, it must pass on it, and determine such question according to its own settled rules of jurisprudence.

Since writing the foregoing, my attention is directed to the case of Bergman v. Bly, 27 U. S. App. 650, 13 C. C. A. 319, and 66 Fed. 40, which is claimed by plaintiffs' counsel to support their contention. The question there was as to the construction of the following statute of limitation of the state of Wyoming:

"When payment has been made upon any demand founded on contract or a written acknowledgment thereof, or promise to pay the same has been made, and signed by the party to be charged, an action may be brought thereon within the time herein limited, after such payment, acknowledgment or promise."

The question to be decided was whether a payment made on a joint and several promissory note, executed and payable in Wyoming by one of two makers thereof, operated to prevent the running of the statute of limitations of that state as to the other maker, be he principal or surety. The supreme court of the state had recently, in the case of Cowhick v. Shingle (Wyo.) 37 Pac. 689, answered this question in the negative; and the United States circuit court of appeals followed that construction, chiefly on the ground that "the construction placed upon the statute by the supreme court of the state is obligatory upon the federal court." We make no question of the correctness of that position, as applied to the facts of that case. But the distinction between the question there and the one at bar is, to my mind, palpable and broad. Were the single question here, can a nonresident defendant found in this state be sued here, and brought into court, by service of process on him in the county where found? and the state court having ruled that he can, this court, in passing on a like service, would follow the ruling of the state court in so construing its statute. But when the question arises, as here, as to whether that process has been fraudulently employed, or improvidently issued, under circumstances which conflict with the privileges of a high court of justice, and the immunity

which public policy throws around the litigant, the issue thus presented is independent of the mere prescription of the statute as to the mode of service, and belongs entirely to the domain of general jurisprudence. And the federal courts, in determining such question, are accorded the exercise of their own independent judgment. This is the very foundation of the ruling of the supreme court of the United States in the cases heretofore noted. The rule of exemption in question stands so like a faithful and venerable sentinel at the very portal of the temple of justice that every consideration of a sound public policy, in my humble judgment, forbids that it should be stricken down. The motion to set aside and vacate the return of service made on the writ of summons herein is therefore sustained.

Note. On general question of exemption of suitors, see 42 Cent. Law J. 398.