44 F.Supp. 67 (1942)
HARDIE
v.
BRYSON.
No. 1042.
District Court, E. D. Missouri, E. D.
April 7, 1942.
*68 Lashly, Lashly, Miller & Clifford, of St. Louis, Mo., for plaintiff.
William O'Herin, of St. Louis, Mo. (Leahy, Walther & Hecker, of St. Louis, Mo., of counsel), for defendant.
MOORE, District Judge.
This is an automobile negligence action in which James L. Hardie is plaintiff and Charles G. Bryson is defendant. The case was removed from the Circuit Court of the City of St. Louis, jurisdiction in this Court being based on diversity of citizenship. An extremely interesting point of law is presented by defendant's "motion to dismiss or quash return of summons". The essential facts are simply these.
Defendant Bryson, a citizen of Illinois, was the defendant in another suit brought by one Esther Clara Harkins, which suit was pending in the Federal District Court for the Eastern District of Missouri. Bryson came into the state of Missouri from Illinois to attend the trial of the above case of Harkins v. Bryson. In the meantime, another suit had been filed against Bryson in the Circuit Court for the City of St. Louis, a State Court, wherein one James L. Hardie was plaintiff (the same being the case at bar), and summons had issued to the Sheriff. On the 10th day of April, 1941, after adjournment of trial of Harkins v. Bryson in the Federal Court, a deputy sheriff of the City of St. Louis followed Bryson from the third floor of the Federal Building and, as defendant was getting into a waiting automobile, served him with the writ in the case at bar, Hardie v. Bryson. The case was in due course removed to this Court and the present motion to dismiss was filed. No question is raised in dispute of these facts and it is taken that defendant Bryson entered Missouri solely for the purpose of attending trial and if, in the eyes of the law, any exemption from service existed, he was still within its protective cloak when the writ was executed.
Defendant bottoms his argument in support of dismissal on authorities which constitute the great weight of judicial opinion, and which grant exemption or immunity from service of summons to parties litigant who enter a jurisdiction solely for the purpose of attending a trial. Counsel cites cases definitely establishing that the Federal Courts have in the past aligned themselves with the above doctrine. One case in particular to which I am referred, Hale v. Wharton, C.C.W.D.Mo.1896, 73 F. 739, stands on all fours on the facts and was decided in favor of defendant's position. Were it not for the argument advanced by learned counsel for the plaintiff it would appear without further consideration that that case was determinative here. The facts in Hale v. Wharton, supra, disclose that defendant Wharton, a citizen of Pennsylvania, was a litigant in a suit in the Federal Court of the Western District of Missouri; Wharton came into Missouri to attend that trial and while there was served with civil process issuing out of the State Court of Jackson County, Missouri. He removed to Federal Court, filed a motion to vacate the Missouri process, and that motion was sustained and the summons vacated.
Plaintiff, however, has urged the effect upon this situation of the now well known case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. *69 L.R. 1487. He states that the Federal cases cited by defendant are all prior to the Tompkins case, which is true. He states that the federal courts have decided in those cases that the question of immunity from service is a matter of "general jurisprudence" or "general law" from which he argues that it is a matter of "substance" under the Tompkins case and this court is required to follow the State law on the matter. That may or may not be true. Plaintiff shows the court that Missouri has adopted the so-called minority rule and grants no immunity save in cases of fraudulent enticement, Baisley v. Baisley, 113 Mo. 544, 21 S. W. 29, 35 Am.St.Rep 726, being the illustrative case on this point. Both parties agree that the Missouri law and the past Federal decisions differ, so there is no issue as to that.
Plaintiff's argument proceeds on two lines: first, he says the process questioned is a process under the Missouri Statutes, R. S.Mo.1939, § 871, the validity of which can only be tested by Missouri law (so long as there is no constitutional defect present, I take it); that even before Erie Railroad Co. v. Tompkins the Federal courts looked to state law for the construction of a state statute and that the Baisley case, supra, involves a construction of the Missouri process statute. This point is considered and disposed of in Hale v. Wharton, C.C.W.D.Mo.1896, 73 F. 739, loc. cit. 743-747, and need not be treated here at length. The vice in the argument is clearly exposed by Judge Philips when he says, loc. cit. 745 of 73 F.:
"It seems to me to be wholly begging the question raised by this motion to say that the defendant was summoned as the letter of the statute directs, and therefore he is bound. The question here presented arises dehors the record of the return. It presents rather the case of an abuse of process,  of an improvident issuing of summons, under a state of facts which, if known to the court at the time, sound public policy requires that the process be not issued, or, if issued, recalled. The objection to the service exists in pais, arising outside of the statute, and superior to the mere words of the writ and the return thereon, which the court could not know until brought to its attention. If, as suggested by the state court, this plea is cut off simply because the mode of service pursued was according to the letter of the statute, the doctrine of exemption from process while attending court could never have had a birth nor a growth. Presumably, on the face of the service of summons in all the adjudicated cases out of which the doctrine in question sprung, it was comformable either to statutory prescription or rule of court directing the method of serving writs of summons. Strangely enough, after flatly placing the right to sue a defendant outside of his state and county, notwithstanding he was at the place of service as a suitor, on the mere words of the statute as to where service might be made, the learned judge, in Christian v. Williams, supra [111 Mo. 429, 20 S.W. 96], said that he wanted it distinctly understood that his remarks did not apply to the case where the party sued was induced by fraud and misrepresentation, or under compulsion of criminal process, `to enter within the boundaries of a county other than that of his residence'; citing a number of state cases where it had been so ruled. Upon what does the exemption thus recognized rest, other than, as repeatedly stated in the decisions of that court, that `it was an abuse of process,' and `that no rightful jurisdiction can be acquired by fraud and misrepresentation?' * * *
"This rule, thus recognized by the state court, is not based on any statute, or legislative exception, but springs from that inherent power resident in every court exercising common-law jurisdiction, to prevent the abuse of process and the subversion of justice by unnecessary oppression. It is a suicidal contradiction, therefore, to say that the generally recognized exemption of a suitor by the courts from process while attending upon the trial of a cause outside of the jurisdiction of his domicile cannot arise because `the statute makes no exemptions, and we are not authorized to make any,' and, in the next breath, say the court will vacate a service of process made under the same statute because it is an abuse of process to inveigle a party from the county or state of his residence. There is no logical escape from the proposition that the same high end of orderly and dignified procedure, demanding noninterference with witnesses and suitors, and the abuse of process, applies equally to both instances."
Secondly, plaintiff takes the position that the right of immunity is one of substance, that Erie Railroad Co. v. Tompkins directs the Federal Court to adopt the rules of substantive law prevailing in the state in which it sits and that, therefore, under that authority the rule of decision should be the Missouri doctrine. This is the heart of his *70 argument, and in his own words plaintiff's counsel sums it up thus:
"The plaintiff respectfully submits that under the law of the State of Missouri valid service was obtained upon defendant Bryson when he was in the City of St. Louis. That such holding of the Supreme Court of Missouri is part of the substantive law of Missouri. That under the Erie Railroad case this Court is required to follow such rule of law. That the rule operates with full force and effect whether Bryson was attending a State court trial or a Federal court trial at the time he was served. That it is the definite policy of the Federal Courts to hold that where valid service is obtained on a defendant in a State Court action, that the Federal Courts will not hold such service invalid merely because the defendant removed to the Federal Court."
I know of no more confusing nor interesting problem before the Federal Courts to-day than that of the delimitation of the doctrine of Erie Railroad Co. v. Tompkins, and it is for that reason that I have ventured to support my ruling with a written opinion. I should be most thankful for the advice of the appellate courts in this matter, but, unfortunately, I find no case clearly in point.[1]
The doctrine of the Erie case requires the Federal Court to follow the state law in matters substantive, yet no clear definition is to be found of the distinction between what is substance and what is procedure. We are left to our resources in borderline cases, subject, of course, to the determination of higher tribunals.
That the weight of authority throughout the United States would grant immunity from service in a case like the present one cannot be doubted. See 50 C.J., §§ 226-256, pages 547-561; 21 R.C.L., §§ 50-59, pages 1305-1313; Bowers on "Process and Service", Section 370, p. 542, Note 85 A.L.R. 1340, 1341, and authorities cited therein. That the majority rule is followed by the past Federal authorities is true. Stewart v. Ramsay, 1916, 242 U.S. 128, 37 S.Ct. 44, 61 L.Ed. 192; Page Co. v. MacDonald, 1923, 261 U.S. 446, 43 S.Ct. 416, 67 L.Ed. 737; Long v. Ansell, 1934, 293 U.S. 76, 55 S.Ct. 21, 79 L.Ed. 208; Lamb v. Schmitt, 1932, 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720; Feister v. Hulick, D.C.1916, 228 F. 821; Durst v. Tautges, Wilder and McDonald, 7 Cir., 1930, 44 F.2d 507, 71 A.L.R. 1394; Hale v. Wharton, C.C.1896, 73 F. 739; Hollidge v. Crumpler, 1934, 63 App.D.C. 330, 72 F.2d 381.
Certain states, however, amongst which the text-writers include Idaho, Rhode Island and Connecticut, have refused to follow the majority view and Missouri has placed itself squarely within the minority group. Mertens v. McMahon, 334 Mo. 175, 66 S. W.2d 127, 93 A.L.R. 1285; Baisley v. Baisley, 113 Mo. 544, 21 S.W. 29, 35 Am.St. Rep. 726; Christian v. Williams, 111 Mo. 429, 20 S.W. 96.
This divergence in judicial viewpoint is best exemplified by the following extracts. Mr. Justice Pitney, in Stewart v. Ramsay, supra, speaking for the Supreme Court of the United States, says, 242 U.S. loc. cit. 129, 37 S.Ct. loc. cit. 45, 61 L.Ed. 192: "The true rule, well founded in reason and sustained by the greater weight of authority, is that suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going".
While in contrast Judge Sherwood for the Supreme Court of Missouri in Baisley v. Baisley, says, 21 S.W. loc. cit. 30: "Again, no authority goes to the extent of holding that a person going into another state may not be sued just like an inhabitant of such state, and it is difficult, on principle, to see why a nonresident may be validly served with summons in a civil action a few days before court convenes, and yet the service of similar process be invalid the day after court convenes".
It must, therefore, be determined which of these two views is to be adhered to, and whether the line of Federal cases cited above is now law. To do this it appears to the Court that the first step should be to seek out the reason behind this rule of immunity, the rationale thereof, and once having determined that to fit the rule into the spirit of the Erie case. Only in so doing can it be told whether the Supreme Court intended us to subordinate our policy to that of the States in this situation. 50 Corpus Juris, Sections 235, 236, pages 552, *71 553, states the considerations upon which exemption is based thus:
"Exemptions from service of civil process extended to witnesses and suitors rests on grounds of public policy, and the due administration of justice which requires that every reasonable method of ascertaining the whole truth in matters before the court should be open to the court, which would be often embarrassed and sometimes interrupted if the suitor might be vexed with process while attending upon the court for the protection of his rights or the witness attending to testify. It is in the public interest that nonresident suitors and witnesses be encouraged to appear voluntarily, and not deterred from so doing, and unless immunity from service of civil process is given they might be deterred from attending through fear of being subjected to the burden of new litigation and delays might ensue and injustice be done, in consequence of which the courts should protect them against possible litigation by granting immunity from service of civil process and thus removing the liability to such litigation. It has also been said that the exemption is founded upon the principle that, where the law exacts a duty from any person it will protect him in the discharge of it, and that individuals cannot demand the use of public civil process so as to arrest or interfere with others in the performance of public duties or of duties required by public process; and that immunity granted a non-resident witness does not work any injustice to anyone, since, unless he comes within the state, there will be no opportunity to serve any process on him."

* * * * * *
"It has been variously stated that the exemption is not for the benefit of the witnesses and parties, but for the benefit of the court, that the protection of courts of justice is the primary object of the rule and the privilege to the individual incidental, and that the exemption is alike for the benefit of the witnesses and parties and of the court."
21 Ruling Case Law, at Section 52, page 1307, says to the same effect:
"The reason for granting this immunity is varied, some placing it as a personal privilege to the suitor or witness, and others as good public policy that a court should not be hampered by having those in attendance on it pounced on by other litigants. The rule was primarily established for the protection of the courts that they might the better administer justice, free from interference with and intimidation of suitors, solicitors and witnesses and disturbance of the court's officers in the exercise of their duties. It becomes a privilege affecting persons in their several capacities only as their protection from process renders the administration of justice more certain and complete. In other words the privilege of the individual is incidental; the protection of courts of justice is the primary object of the rule. No one is hurt by this exemption, since, if it did not exist, the non-residents would not go into the foreign state, and service of summons on them could not be made anyway."
Bowers on "Process and Service" at Section 270, page 542, explains the rationale thus:
"The rule fortified by the stronger reasons, and perhaps sustained by a preponderance of authority, is that when a nonresident party to a pending action necessarily comes within the state for the purpose of attending the trial of the case, or on business connected therewith, he is, during such time of his necessary stay, privileged and exempt from the service of civil process in the state. This immunity, while it may be declared by statute, does not depend on statutory provisions, for courts have power, independent of statutes, to protect their officers, suitors and witnesses from molestation by means of process from the courts, which special protection is afforded in the interest of public justice. The privilege of immunity from service rests upon grounds of public policy, and of such policy as it relates to a matter of supreme importance  the administration of justice. In order that causes may be fully heard and a just result reached, and that an orderly and unhampered administration of justice may be assured, the law has announced the rule of exemption. If parties to a pending cause or their witnesses, are liable to be thus sued, they may be intimidated and prevented from complying with the foreign court's mandate, if actually summoned or subpoenaed, or from attending voluntarily as is their privilege. It is against public policy to permit them to be deterred by fear of being subjected to suit while attending or so going or returning."
In Lamb v. Schmitt, 285 U.S. 222, loc. cit. 225, 52 S.Ct. 317, loc. cit. 318, 76 L.Ed. 720, Mr. Justice Stone said: "The general *72 rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit, are immune from service of process in another, is founded, not upon the convenience of the individuals, but of the court itself. * * * As commonly stated and applied, it proceeds upon the ground that the due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation." (Emphasis the Court's).
And, finally, in Long v. Ansell, 293 U.S. 76, loc. cit. 83, 55 S.Ct. 21, loc. cit. 22, 79 L. Ed. 208, Mr. Justice Brandeis had this to say relative to the rule under consideration: "The constitutional privilege here asserted must not be confused with the common-law rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit, are immune from service in another. That rule of practice is founded upon the needs of the court, not upon the convenience or preference of the individuals concerned. And the immunity conferred by the court is extended or withheld as judicial necessities require". (Emphasis the Court's).
This last is of especial interest, showing as it does the attitude toward the nature of the rule taken by the author of the opinion in Erie Railroad Co. v. Tompkins itself.
From this summary it is clear that although other grounds have been put forward, the better considered opinions place the raison d'etre of the rule in the convenience of the court itself. No substantive right is vested in the parties litigant, who are mere incidental beneficiaries of a policy not designed for their benefit. Indeed, a moment's consideration will convince that such theory is the only sound one upon which the immunity from service can be grounded. I do not believe that the courts would willingly uphold this rule if they were convinced that the administration of justice was in no way aided thereby. The immunity is only extended "as judicial necessities require" and will be denied if the court feels that under certain circumstances the judicial necessity is not great enough to require it.
Mr. Justice Brandeis refers to the immunity as a "rule of practice" and that it surely is  a rule of practice of the court itself, rather than one for the parties. This type of rule of law really stands in a class by itself, having nothing to do with either a party's rights (substantive law) or the manner in which the party gets those rights (procedural law, in the common sense). The authorities show that it falls in that class of laws which have to do with the functioning of the courts themselves considered as separate and distinct entities from the litigants. It is in the same category, I should say, as matters relating to certain contempts of court, where, although the parties may incidentally benefit from a citation, the primary consideration is the interest of the court itself.
With this in mind it at once becomes manifest that Missouri authority can have nothing whatsoever to do with a situation wherein no substantive right of a litigant is involved. Certainly Erie Railroad Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 824, 82 L. Ed. 1188, 114 A.L.R. 1487], does not go so far as to direct us to follow state law in matters relating solely to our own methods of administering justice. That case has relation to the "rules of decision" in law suits, and the rule involved here could hardly be called a rule of decision in any sense. This rule of law arises from the inherent power and necessity of courts to carry out their duties, and can in no way affect the substantive rights of any party. The evil which the Erie case seeks to avoid is the alteration of substantive rights by choice of forum and that evil cannot be present when the rule involved concerns a policy of administration of justice rather than a right of litigants.
The Federal Courts have a uniform procedure unaffected by the Erie case, and it is my opinion that the rule here although not covered by the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, falls within that body of law where the Federal Courts not only may, but, for the sake of uniformity, should maintain their own standards. That procedure should be uniform is axiomatic, and I fail to see why if through administrative necessity the Federal Courts in other states must throw a cloak of immunity about litigants, the necessity to do the same is in any way less pressing because this Federal court happens to sit in Missouri. The Erie case *73 seeks to prevent the accident of diversity of citizenship from creating a lack of conformity in substantive law within the borders of a state. Employing the same line of reasoning might it not be said that the method of administering justice in the Federal courts should not depend upon the particular state in which the individual court sits, and that the "convenience of the court" is the same in all circuits and states.
In deciding this matter in the way I do, I am not unmindful of the line of cases cited me by plaintiff, which hold that on removal the validity of state process is to be judged by state law (absent a constitutional impediment). Paragon Coal & Coke Co., Inc., v. J. W. Kirby & Sons Coal Co., D.C., 9 F.2d 686; Frank MacMonnies Corp. v. Sunical Packing Co., 2 Cir., 75 F. 2d 467; Blauner v. Hirsch, 6 Cir., 57 F.2d 114.
These cases sound as they may be, however, do not involve the issue here presented. Had defendant Bryson been attending a Missouri Court at the time he was served with this writ I should consider them stronger authority, it being my opinion that in such an alternative situation the policy of the federal courts can play no part, and the only true test of the validity of the service should be Missouri Law. Certainly Missouri has the right to deny immunity to litigants in its own courts and those litigants should have no right, by simply removing to the Federal Court, to gain an immunity they never possessed until the moment of removal. The Federal judiciary may not determine for the State of Missouri that its courts must grant immunity to litigants therein. But, and this is the basis of my holding, neither should Missouri law determine whether or not the Federal Court shall have the power in the process of administering justice to protect its litigants as it sees fit. Such cannot be the intendment of the Erie case.
Although this opinion amply covers the point, I should like to answer briefly the proposition advanced by plaintiff that (1) the question of immunity from service has been said to be one of "general law" by Federal Courts; (2) that general law and substantive law are equal and the same; (3) that Erie Railroad Co. v. Tompkins, directs us to follow state substantive law; hence that this court is bound here to apply Missouri law. This is a proposition of logic, and, in my opinion, is guilty of a common fault of pure logic, to-wit, a false assumption or postulate supporting the entire structure. The step with which I find the greatest fault is the statement that the general law, prior to the Erie Railroad decision, equals the substantive law of the post-Erie Railroad era. Plaintiff cites no authority and merely assumes this, but I think it a most dangerous conclusion. Without going too deeply into the reasons why this assumption is not justified, suffice it to say that the motives and conditions resulting in a rule of law being denominated one of "general law" no longer prevail since the Erie case. The reason for the distinction, in my opinion, is best expressed by an extension of the maxim "Cessante ratione legis cessat ipsa lex".
One phase of this problem which might suggest itself is presented by a hypothetical question; suppose defendant here had not removed, but had made this same motion in the state court? What disposition would the state court have made of it? Plaintiff would say, I am sure, that the service would be held good, but of that I am not altogether certain. Under the law as I have stated it I fail to see how the Missouri Court, were the problem called to its attention, could well overlook the crucial fact that defendant in Harkins v. Bryson was in attendance on a Federal trial court and that our policy in that regard must enter into its consideration of the validity of the service. What I say, in effect, amounts to the assertion that under the facts in this case the proper approach would be for the Missouri Court to look to Federal authorities and, by way of comity and at the expense of its own jurisdiction, void the summons. If, however, the Missouri courts would not do that in a proper case, that does not mean that this court will not uphold its own policy when it has the opportunity to do so. I make these observations on a hypothetical situation, not through any desire to fashion obiter dicta, but simply to rebut the unwarranted inference that a dismissal in this type of case can result only from the accident of removal jurisdiction in this court.
Therefore, for the reasons assigned this Court holds that at the time defendant was served with the writ herein he was entitled to exemption from service on account of his having entered this state wholly for the purpose of attending a trial in this Court, in which he was a party, *74 and that in pursuance of its policy of granting immunity from civil process to non-resident suitors and witnesses, this Court will not recognize the validity of service of the writ on defendant Bryson. The motion to dismiss the action must, therefore, be sustained and it is so ordered.
NOTES
[1] For an interesting summary of the problem of substance and procedure under the Erie case see 9 Univ. of Chicago Law Review, 113 and 308, and 34 Illinois Law Rev. 271, which, unfortunately, do not treat of the immediate problem herein.