### BENNETT *v.* FENTON *et al.*

*(Circuit Court, D. Minnesota. February 19, 1890.)*

QUIETING TITLE—SERVICE BY PUBLICATION—JUDGMENT.

> Under Gen. St. Minn. 1878, c. 75, § 2, which authorizes one in possession of land to sue any person claiming an interest therein "for the purpose of determining such adverse claim," a judgment in such an action against a non-resident defendant, upon service by publication, is valid, the action being in the nature of a proceeding *in rem.*

At Law. Ejectment by James Bennett against William Fenton and the city of St. Paul.

*Warner & Lawrence* and *S. & O. Kipp,* for plaintiff.

*O. E. Holman* and *Cole, Bramhall & Morris,* for defendants.

SHIRAS, J. This action was brought for the purpose of determining the title and consequent right of possession to certain realty situated in Ramsey county, Minn. The plaintiff derives title from the original patentee, and the defendants from a sale for delinquent taxes, a deed based thereon, and a decree rendered in the district court of Ramsey county in a case entitled *Samuel D. Lord* v. *John J. Henry,* which purports to quiet the title to said realty in said Lord as against the claims of said Henry, the then holder of the patent title, the present defendants holding under Lord. The parties have in writing stipulated that if the proceedings had and decree rendered in said case of *Lord* v. *Henry* are valid and binding upon said Henry, then judgment is to be rendered in this case for defendants; but if the same are void and of no effect in this court, then judgment is to go in favor of plaintiff. The sole question for determination, therefore, is that of the validity or invalidity of the decree in the named case of *Lord* v. *Henry.* When that case was brought in the state court, Henry was a non-resident, and service of the summons was had by publication only, and no appearance was entered for the defendant. The validity of the decree is questioned mainly on the grounds that the action was purely personal, and, there being no

personal service of the summons on the defendant within the jurisdiction of the court, and no appearance entered, the court rendering the decree was without jurisdiction, and hence the decree is invalid. Section 2, c. 75, Gen. St. Minn. 1878, is as follows:

"*Action to Determine Adverse Claim.* An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate or interest therein or lien upon the same, adverse to him, for the purpose of determining such adverse claim, estate, lien, or interest; and any person having or claiming title to vacant or unoccupied real estate may bring an action against any person claiming an estate or interest therein adverse to him, for the purpose of determining such adverse claim, and the rights of the parties, respectively."

There are also contained in the statutes of the state provisions authorizing the appointment, by non-resident owners of realty, of agents, to whom notice shall be given of proceedings affecting the realty; and also authorizing the service by publication of the summons in given cases, when personal service thereof cannot be had.

In the case of *Lord* v. *Henry* the complaint was in the following form, omitting the caption:

"Plaintiff complains of the above-named defendant, and alleges and shows to the court: That the plaintiff now is, and for a long time past has been, the owner of the following described real estate, situate and being in the county of Ramsey and state of Minnesota, and described as follows, to-wit: Lot numbered four (4) of block one, (1,) in Bazille and Roberts' addition to West Saint Paul, according to the recorded plat thereof on file with and in the office of the register of deeds in and for said county and state. That said defendant claims an estate and interest in said real estate adverse to this plaintiff, which said claim is unlawful and wrongful, and is an injury to plaintiff's said title to said real estate, and that this action is brought for the purpose of determining such adverse claims, estate, and interest. That said property is vacant and unoccupied, and unimproved. Wherefore plaintiff prays judgment of the court as follows, against said defendant: *First*, that plaintiff be quieted in his title to said above-described premises free and clear of any estate, interest, or claim held or claimed by said defendant; *second*, that said defendant be perpetually enjoined from claiming and asserting any right, title, estate, and interest in or to said premises, or any part of the same, adverse to this plaintiff; *third*, for plaintiff's costs and disbursement's herein, and for such other and further relief as he may be entitled to receive."

As personal service of the summons could not be made upon the defendant, Henry, publication thereof was made under the provisions of the statute, and on the 17th day of August, 1882, a decree in the following form was rendered by the court:

"The above cause having been duly tried by said court without a jury, Messrs. Read & Rotert appearing as attorneys for the plaintiffs, there being no appearance for the defendant, the summons having been duly served by publication, and the said court having on the 17th day of December, 1881, duly made and filed its findings and decision in said cause in favor of said plaintiff, and against said defendant; now, upon advisement, and upon motion of plaintiff's said attorney, and pursuant to said decision, and as therein directed, it is by this court hereby ordered, adjudged, and decreed as follows: That said plaintiff, Samuel D. Lord, is the owner in fee-simple of the lot and land described in the complaint in this action, being and situate in said Ram-

sey county and state of Minnesota, and described as follows, to-wit:  *  *  *
That said defendant is not the owner thereof, and has no right, title, or in-
terest or estate therein whatsoever, and that said plaintiff's title thereto is
forever quieted in him.  That said plaintiff recover judgment herein against
said defendant for his costs and disbursements of this action.  And that a cer-
tified copy of this decree be recorded in the office of said register of deeds of
said Ramsey county, Minn."

The question of the force to be given to judgments and decrees ren-
dered in cases wherein service of the summons has been had by publi-
cation only, has been repeatedly before the supreme court.  In *Pennoyer*
v. *Neff*, 95 U. S. 714, it is held that substituted service by publication
is sufficient to inform a non-resident of the object of proceedings taken,
where the property is brought under the control of the court by seizure
or some equivalent act, but, when the suit is brought to determine his
personal rights and obligations,—that is, when it is merely *in personam*,
—such service upon him is ineffectual for any purpose.  In *Hart* v. *San-
som*, 110 U. S. 151, 3 Sup. Ct. Rep. 586, it was held that—

"Generally, if not universally, equity jurisdiction is exercised *in personam*,
and not *in rem*, and depends upon the control of the court over the parties,
by reason of their presence or residence, and not upon the place where the
land lies in regard to which relief is sought.  Upon a bill for the removal of
a cloud upon title, as upon a bill for the specific performance of an agreement
to convey, the decree, unless otherwise expressly provided by statute, is clearly
not a judgment *in rem*, establishing a title in land, but operates *in personam*
only, by restraining the defendant from asserting his claim, and directing him
to deliver up his deed to be canceled, or to execute a relief to the plaintiff.
*  *  *  Such a decree, being *in personam* merely, can only be supported,
against a person who is not a citizen or resident of the state in which it is
rendered, by actual service upon him within its jurisdiction; and constructive
service by publication in a newspaper is not sufficient."

In *Bryan* v. *Kennett*, 113 U. S. 179, 5 Sup. Ct. Rep. 407, a decree
based upon publication of notice to non-resident minors, and providing
that the right, title, and interest of such non-resident defendants should
be vested in the complainant by force of the decree itself, was sustained.
In *Freeman* v. *Alderson*, 119 U. S. 185, 7 Sup. Ct. Rep. 165, it was
held that service by publication under the state statute was sufficient to
sustain a decree determining the right of possession and for partition of the
land, but would not justify the rendition of a personal judgment against
the non-resident for the costs of the proceeding.  The general distinction
drawn in the cases is that when the proceedings are *in personam*, and the
decree operates either by way of restriction or mandatorily upon the per-
son, then the service by publication only, upon a non-resident, does not
confer jurisdiction over the person of the defendant, who is beyond the
territorial jurisdiction of the state wherein the suit is pending; but, when
the proceedings are *in rem* or are of that nature, then, so long as the de-
cree or judgment based upon substituted service is confined in its opera-
tion to the property within the jurisdiction and control of the court, it
will be upheld.  Proceedings in partition, for foreclosure of mortgages
or other like liens, for condemnation of property in the exercise of the
right of eminent domain, and those in which an attachment has been is-

sued and levied, have been held to be in the nature of proceedings *in rem*, and substituted service has been deemed sufficient to sustain the decree, so far as it affects the property in question.    When the decision in *Hart* v. *Sansom* was announced, it was generally held to lay down the rule that a decree in equity quieting the title to realty operated only as a decree *in personam*, and therefore was of no force, when based only on service by publication on a non-resident defendant.    In the light of the subsequent cases decided by the supreme court, it is questionable whether too broad a construction has not been given to the language used in that opinion; or, perhaps, it would be more accurate to say that sufficient consideration and weight has not been given to a limiting clause in the opinion, wherein it is stated that, "upon a bill for the removal of a cloud upon title, as upon a bill for the specific performance of an agreement to convey, the decree, unless otherwise expressly provided by statute, is clearly not a judgment *in rem*,   *   *   *   but operates *in personam* only, by restraining the defendant from asserting his claim," etc.    In other words, if the enforcement of the decree touching the title is dependent solely upon the inherent powers of a court of chancery, it is, of necessity, a decree *in personam*, because generally equity jurisdiction is exercised *in personam*, and depends upon the control of the court over the parties.    If, however, there is statutory power given to the court to effectuate its decree by controlling the property, then the proceeding becomes in its nature a proceeding *in rem*, and in such case service by publication, in case of non-residents, will confer jurisdiction to deal with the property.

It becomes essential, therefore, to ascertain the nature of the power conferred upon the courts of Minnesota by the statute already quoted, under the provisions of which the suit of *Lord* v. *Henry* was instituted. In brief, the purpose of the statute is to enable parties, whether in possession of realty, or where the same is vacant and unoccupied, to settle adverse claims thereto, and determine the ownership, and consequent right of possession, thereto.    No suit can be brought under this statute without describing the particular realty in question, nor can a complaint be so framed as not to limit the litigation to the realty named in the complaint.    The real object sought to be accomplished is to settle and quiet the title in the complainant, to the particular realty, and the statute provides that the decree rendered after the lapse of a specified time may have the force and effect of a deed.    Practically, the decree operates on the land, and it is difficult to see why the same cannot be sustained as well as in cases wherein partition is made, or wherein condemnation is had for public purposes.    In some of the decided cases, it is held that to give jurisdiction *in rem* there must be seizure, in some mode, of the realty, under process of the court, for the double purpose of bringing the property under control of the court, and of insuring notice to the defendant.    In proceedings for partition or for condemnation for public use, or for foreclosure of a mortgage, a writ or process is not issued for the seizure of the property, and yet these proceedings are held to be *in rem*. In such cases the record shows, at the very initiation of the proceeding,

the particular property that is sought to be dealt with, and the court obtains control over the property just as effectually by the initiation of the proceedings as it does by the levy of a writ on the same. In cases wherein the right of action does not grow out of the property itself, and where the petition or bill does not describe any particular property as the subject-matter of the litigation, as in cases for the recovery of debts aided by attachments, it is clear that no property is brought within the control of the court, except through the issuance and levy of process; and in this class of cases such levy is absolutely necessary in order to affect the property by the proceedings taken in the case. So far as notice to the defendant is concerned, is not this secured as well by the filing of a bill describing the realty sought to be affected as by the issuance of a writ of attachment, the levy thereof, and return by the sheriff or other officer? Such writ and return become part of the files or record of the case, and, so far as notice to the defendant is concerned, they are not more effectual than the filing of the bill in an action to quiet title.

In the absence of statutory authority for the bringing of an action to quiet title, if a claimant of realty invokes the aid of a court of equity to settle the adverse claims made by another, he puts in motion the ordinary equitable powers of the court, which are exercised *in personam*, —that is, through the control of the court over the person of the defendant,—in which case personal service upon the defendant, within the territorial limits of the jurisdiction of the court, is essential to confer jurisdiction upon the court. In case, however, the state has by statute provided that the title to realty within its borders may be settled by a proceeding for the quieting of the title, wherein the court is required to investigate the title to a particular tract of land, and has provided that, in case an adverse claimant is a non-resident of the state, service by publication may be made, then the court is not proceeding under its ordinary equitable power with the limitations pertaining thereto, but is proceeding under the power and rights conferred by the statute. Unless it be held that the state can, by proper enactment, provide for a proceeding against the property to quiet the title, and in case of non-residents provide for service by publication or its equivalent, then it is practically put beyond the power of the state to secure to its citizens the means by which their right and title to realty may be settled. Of the wisdom of statutes providing for actions to quiet titles to land, occupied or unoccupied, there can be no question. Unless, in connection therewith, the right to substituted service in case of non-resident claimants can be sustained, these statutes will, in many cases, be rendered inoperative. The necessity for the exercise of jurisdiction over the property in dispute, and the giving of notice by publication to non-residents, is evidenced by the fact that so many of the states have adopted such statutes. Furthermore, the congress of the United States has declared "that when in any suit, commenced in any circuit court of the United States, to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the de-

fendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order," etc., that is to say, service in such case upon such absent defendant may be made by publication.     18 St. at Large, p. 472, § 8.    Under this statute the circuit courts of the United States, as courts of equity, can take jurisdiction of proceedings to settle adverse claims to realty, or to remove a cloud from the title thereof, and render a decree which shall bar the claim of an absent defendant served only by publication.    This statute confers upon the United States courts the power to remove a cloud from the title to realty without having actual jurisdiction over the person of the defendant by means of personal service, and the statutes of the state confer the like power upon the courts of the state.    Where the property is within the state, it seems clear that the state can, by appropriate legislation, bring the same under the control of the courts of the state, so that the latter can settle adverse claims thereto or remove clouds from the title thereof, even though the adverse claimant may be a non-resident of the state, so that personal service upon him cannot be had, thus necessitating service by publication or its equivalent.

It is admitted that in cases for partition, condemnation, and the like, the decree and judgment of the court will bind the property, and through its effect upon the property will cut off the claims or rights of non-residents served only by publication.    It must therefore be admitted that the state can deal with the property within its limits, even though owned by a non-resident, and, in providing a method for quieting the title to realty, it is exercising only the same right and power over the land as it does in providing methods for partitioning the same, or condemning it for a public use.    It is not questioned that the state has the right to tax the lands within its borders, although owned by non-residents.    If the taxes are not paid, the land may be sold, and the title of the non-resident owner may be cut off by proceedings based upon published notice. It must therefore be true that the state has the right by appropriate enactment, in its own interest and in that of its citizens, not only to provide for the taxation, partitioning, or condemnation of realty within its borders owned by non-residents, but also for the quieting the title thus created to such realty, as against all adverse non-resident claimants. The limitation upon this power of the state is as to the mode of procedure. It has no jurisdiction over the person of the non-resident, and therefore can confer none upon its own courts.    It has, however, jurisdiction over the property within its limits, and can therefore confer jurisdiction over the same upon its courts.    When the state, by statute, provides a mode for quieting the title to lands, occupied or unoccupied, situated within the state, and as an incident thereto provides for giving notice by publication to non-resident claimants of the pendency of the proceeding, such legislation should be upheld, if by any fair construction of the statute it can be brought within the recognized power of the state.    If, by the provisions of the statute, the decree itself settles the *status* of the title, and the right to possession and control of the land, without the necessity of

enforcing the decree by actual control over the person of the defendant, then the suit and decree directly affect the land, and are in the nature of a proceeding *in rem.* This being so, then substitutive service is effectual against non-residents. If the judgment to be pronounced by this court was to be final in this cause, I should feel embarrassed by the rulings heretofore made in this circuit, several of which were rendered by the circuit judge, and which, upon the authority of *Hart* v. *Sansom,* hold a proceeding to quiet title to be *in personam,* and therefore ineffectual, when based upon service by publication. It being understood, however, that it is the settled purpose of counsel to take this case to the supreme court in order to obtain a final and authoritative decision of the question, it follows that the ruling now made will have little effect other than to determine which of the parties shall become the plaintiff in error. Under these circumstances, I have felt at liberty to consider the question as one still open for examination, and have, as already indicated, reached the conclusion that the decree rendered in *Lord* v. *Henry* can be sustained, so far as it deals with the title to the land. This being so, then, under the stipulation of the parties, the judgment must be in favor of the defendant, and it is so ordered.