CLEARY v. DANIELS (Price River Irr. Co. Intervener)

No. 3063. Decided August 8, 1917. Rehearing denied October 5, 1917. (167 Pac. 820.)

1. WATERS AND WATER COURSES—PRESCRIPTIVE RIGHTS—PERIOD OF USE OF WATER—SUFFICIENCY OF EVIDENCE. In suit over the right to use waters of a spring, evidence *held* to show that there was only a certain part of each year within which defendant had used and could use the waters from the spring for irrigation. (Page 498.)

2. WATERS AND WATER COURSES—PRESCRIPTIVE RIGHT—EXTENT— PREVENTION OF USE BY ANOTHER. Defendant, having a prescriptive right to use the waters of a spring for irrigation from May to August, cannot prevent plaintiff from using the surplus water not needed by defendant. (Page 500.)

3. WATERS AND WATER COURSES—PRESCRIPTIVE RIGHTS—BENEFICIAL USE. Though defendant had a prior and paramount prescriptive right to use waters of a spring for irrigation as against plaintiff, she had no right to the waters except as she put them to a beneficial use. (Page 500.)

4. WATERS AND WATER COURSES—APPROPRIATION—QUANTITY. Though the prior appropriator of water acquires the right to use it, he does not obtain title to any specific water, merely acquiring the right to the use of a specific quantity of water for a limited time in each year or during the whole of the year; though the owner has acquired a prior right to the use of water, yet if he does not use it during a portion of the year, or if he cannot make it available by reason of

natural conditions, he cannot prevent another from using the water while he cannot use it or make it available for use. (Page 501.)

5. WATERS AND WATER COURSES—APPROPRIATION—RIGHT TO WATER—SUFFICIENCY OF EVIDENCE. In suit involving the waters of a creek, evidence *held* to support the findings of the court that defendants and an intervener were entitled to the use of all the waters. (Page 501.)

Appeal from District Court, Fourth District; *Hon. A. B. Morgan,* Judge.

Action by M. J. Cleary against Amelia Daniels, wherein the Price River Irrigation Company intervened.

Decree for defendant and intervener. Plaintiff appeals.

AFFIRMED in part and REVERSED in part, and cause remanded, with directions.

*Thurman, Wedgwood & Irvine* for appellant.

*Booth & Booth* for defendant.

*M. Thomas* for intervener.

FRICK, C. J.

Plaintiff's counsel, in their abstract, give a correct synopsis of the allegations of the complaint in the following words:

"The complaint alleged that plaintiff was and is the owner of the north half of the southeast quarter and the north half of the southwest quarter of section 25, township 10 south, of range 7 east, Utah County, Utah.

"That there is a small spring of water on this land which plaintiff at considerable expense had diverted to his house for domestic use.

"That on the 23d day of June, 1915, defendant wrongfully entered upon said land and destroyed plaintiff's ditch and means of diversion of said water and turned the same down the hillside into a canyon, to plaintiff's damage in the sum of $200.

"Plaintiff prayed for damages in the sum of $200 and for an injunction."

Defendant in her answer in effect denied all the allegations of the complaint except that there is a spring of water as described in the complaint. The defendant, however, also set up the right to use the waters of said spring by prior appropriation and use for a beneficial purpose, to wit, for the purpose of irrigating her land; and she further alleged that, if the plaintiff is the owner of the land described in the complaint, he acquired title thereto, and especially to the waters of said spring, subject to the rights of the defendant to use the same for the purpose aforesaid. The defendant prayed judgment that the plaintiff take nothing by his action; that she be adjudged to be the owner of the waters of said spring "for the irrigation of her said lands during the irrigation season and for watering stock during the whole of each year." She also prayed for an injunction, and for general relief.

The plaintiff replied to that portion of the answer in which is stated the defendant's right to the waters of said spring, and he restated his claims thereto and reiterated the prayer of his complaint.

The Price River Irrigation Company, a corporation, hereinafter called intervener, filed a complaint in intervention in which it claimed all the waters flowing in the ravine in which said spring is situated, and pleaded two decrees theretofore entered by a court of competent jurisdiction by virtue of which it claimed the right to said waters.

A jury was impaneled to determine the question of damages only, and the court disposed of the whole case respecting the rights of the parties to the waters of said spring. The court, however, also directed the jury to return a verdict of no cause of action in favor of the defendant on the question of damages. The court entered a judgment or decree in favor of the defendant and the intervener and enjoined the plaintiff from interfering with the waters of said spring.

The plaintiff appeals, and insists that the court erred in its findings of fact and conclusions of law and decree.

The plaintiff directs most of his arguments against the findings of fact, conclusions of law, and decree in favor of the intervener. He, however, also assails the findings of fact,

conclusions of law, and decree in favor of the defendant. For reasons hereinafter appearing, we shall dispose of the appeal against the defendant first.

The spring in question is located near the head of a ravine which in the findings is called "Daniels' hollow." The spring is very near the summit, which divides the watershed, and the ground immediately surrounding the spring is of a very wet or boggy nature. The spring is located on the side of a mountain and within eight or ten feet of the bottom of the ravine aforesaid. All of the waters of said spring, when mingled and in connection with the waters produced by the melting snow and the waters of other springs situated lower down in said ravine or hollow, the court finds flow down said ravine and have been used by the defendant and her predecessors in interest for more than 35 years preceding the commencement of the action during the irrigation season of each year for the purpose of irrigating the pasture and other lands of the defendant which are located down the ravine or hollow about a mile and a half from the spring. The court further finds:

"That the waters from said 'Daniels' hollow' vary in their quantity from time to time, and at times there is more than sufficient water flowing down the said 'Daniels' hollow' to irrigate the portion of the lands of the defendant which have heretofore been irrigated therefrom and at such times of excess, the surplus waters of said 'Daniels' hollow' flow over and across the lands of the defendant into 'White river,' which is a tributary of Price river, in Carbon County, State of Utah. * * *

"That the lands of the defendant are of a porous nature, and they require large quantities of water to irrigate them; that the seepage and drainage water from the lands of the defendant finds its way into White river, and thence into Price river, whither said lands of the defendants are irrigated from the waters of said 'Daniels' hollow' or from other sources.

"That the springs arising on the lands of plaintiff, * * * and called in this action the 'Cleary spring,' are a portion of the waters of said 'Daniels' hollow,' and the waters from

said spring were included in the appropriation of said waters by said James A. Bean, and the use of the waters from said 'Cleary spring' has been continuous and uninterrupted for the irrigation of the said lands of the defendant during the irrigation season of each and every year since the year 1878, and said use has been made by the defendant and her predecessors in interest, as the owners of said lands in said section 30, township 10 south, of range 8 east. * * *

"That the plaintiff has no rights whatsoever in or to the waters of 'Cleary spring' or 'Daniels' hollow,' but the defendant and the intervener are the owners of the right to use the whole of the waters of said 'Cleary spring' and 'Daniels' hollow' during the whole of each and every year."

Upon the foregoing and other supplementary findings the court made its conclusions of law and entered its decree in which it decreed that the defendant had the primary right to the use of the waters of said spring for the purpose of irrigating twenty-five acres of land, and permanently enjoined the plaintiff from interfering with the waters of said spring and with the defendant in using the same.

In view that we are now considering the appeal as it affects the defendant, we have only referred to the findings and decree in her favor. Counsel for appellant insists that the findings are not supported by the evidence. After a careful reading of the evidence, we are forced to the conclusion that, with the exceptions hereinafter to be noticed, the findings are not only supported by, but they accord with, the great weight of the evidence. It is not practical to set forth the evidence, and it must suffice to say that the foregoing is our conclusion as we gather it from the whole evidence. The difficulty with the findings is not that they are not supported by the evidence, but it is that in some respects they are not specific and are not responsive to the whole evidence.

For example: Both the findings and the decree are general and sweeping with respect to defendant's right to use the waters of the spring for the purpose of irrigation. That is, so far as the findings and decree are concerned, there is no limit of time fixed within which the defendant may use the waters of the spring; yet the evidence is

beyond question that there is only a certain part of each year within which the defendant has used and can use the waters from said spring. Then again, the evidence is beyond dispute that when the hot summer months are reached the waters of said spring cease to flow in sufficient quantity to be available to the defendant, and that that condition continues until the spring of the following year when the snows begin to melt. In other words, the evidence clearly shows that during the spring and early summer months, reaching into the month of July, or later, the melting snows greatly augment the flow of water from the spring in question, and that the flow therefrom continues until late in the month of July, some witnesses put it as late as the latter part of August. The evidence, however, is quite convincing that as a general rule possibly in July, and certainly in the latter part of August in each year, the waters of the spring are not available to the defendant, for the reason that by that time the snow waters have practically all disappeared, and there is not sufficient water left to flow down the ravine or hollow. When that time arrives the water flowing from the spring disappears by evaporation and by sinking into the earth within a very short distance after it leaves the spring. It is true that the defendant contends that the waters from the spring nevertheless reach her land, which is a mile and a half farther down the hollow, by underground seepage. There are, however, two answers to that contention. The first one is that there is nothing save pure speculation to support the contention, while there is considerable evidence to the contrary; and the second answer is that the evidence is beyond all question that no water reaches the defendant's land after the last of August. While it is true that the evidence shows that there are puddles standing here and there in the bottom of the ravine, yet the evidence is conclusive that the water ceases to flow, and if there is a slight flow it does not extend back or up to the spring in question. The defendant, testifying on her own behalf, said:

"The land that we irrigate at the ranch is a black loam. It will not raise crops without irrigation. We commence using all of the water from Daniels' hollow about the 1st of

May. We continue to use it until about the last of August.''

She has stated the fact in that regard as favorable to her contention as any witness, and more favorable than some of them. There is a period of time, therefore, between the 1st day of September of one year and the 1st day of May in the following year that the defendant has not used, does not and cannot use, the waters of the spring for any purpose. While it is true that in her prayer, as we have seen, she claimed the waters of the spring for the entire year, yet there is not a word of evidence in support of that claim. She therefore cannot prevent the plaintiff from using the water when she cannot use it. Long on Irrigation, section 60, p. 108. As before stated, therefore, the findings of the court and the decree are too sweeping as against the plaintiff, and that is especially true with regard to the portion of the decree containing the injunction. While it is true that under both the law and the evidence the defendant has a prior and paramount right to use the water of the spring as against the plaintiff, yet she has no right to the water except as she puts it to a beneficial use. In 2 Kinney on Irrigation, etc. (2d Ed.) section 648, the law governing springs is clearly and tersely stated in the following words:

''The waters of a flowing stream may be appropriated at its source in a spring, as well as the waters of the spring itself. * * * But after the waters of a spring have passed into a stream to which the rights of prior appropriators have attached, the water cannot be taken from the spring to their injury by a later appropriator; and it is immaterial whether the water reaches the stream by percolation or seepage.

''And again, rights cannot be acquired to the waters of springs situated along the channel of a stream and naturally flowing into it, and which constitute its direct source of supply, by entering upon, cleaning out, and thereby increasing the water supply, as against prior appropriators of all of the waters of the stream. But where the spring is not a source of supply of a stream, there is no question as to the right to appropriate the waters thereof. So also one who first appropriates the waters of a spring on the public lands may continue to use such water as against one who subsequently acquires title to the land on which the spring is situated.''

Under the law and the evidence, therefore, the defendant has a prior right to the use of the waters of the spring during

the months of May, June, July, and August of each year, since during those months she applies the same to a useful purpose. After that time, however, she has no right to the waters of said spring for two reasons: **4, 5** (1) Because she no longer uses the water; and (2) because the waters of the spring then cease to flow down to her land, and therefore are no longer available to her. Notwithstanding the fact, however, that the evidence is clearly to the foregoing effect, the court nevertheless enjoined the plaintiff from using any of the water of said spring for any purpose. In that regard, as we have shown, the findings and decree are too sweeping and are wholly unsupported by the evidence. If water were like other property to which one may acquire absolute title, then, as a matter of course, the owner has the right to prevent all interference therewith by any one, and he may do so regardless of whether he himself uses the property or not. The decree and injunction in this case seem to be based upon that theory. Such is, however, not the law with respect to the use of water. Water in this arid region is too precious to be wasted. While the prior appropriator acquires the right to use he does not obtain title to any specific water. He only acquires the right to the use of a specific quantity of water either for a limited time in each year or during the whole of the year. Although the owner has acquired a prior right to the use of water, yet if he does not use it during a portion of the year, or if he cannot make it available by reason of natural conditions like those before stated, he cannot prevent another from using the water during the period of time that he cannot use it, or make it available for use. While, under such circumstances, he retains all of his rights to the water, yet he may not insist that the water be wasted merely because he has a prior right to use it. As a matter of course, under such circumstances, the one who puts the water to a beneficial use may do so only during the time the first appropriator does not or cannot use it, and the one who then uses it may make no use thereof which will in any way affect the quantity or quality of the water during the period of time the first appropriator has the right to its use.

What, then, should the findings and judgment be in this case? Here the plaintiff brings an action for damages which he claims to have sustained by reason of the defendant's interference with his spring, which is situated entirely on his land. While the defendant denies the physical acts complained of, she also claims a prior and exclusive right to the use of the water flowing from the spring, and therefore insists that she has not interfered with any of plaintiff's rights. She also proves that the plaintiff acquired title to the land upon which the spring is situated some 30 years after she and her predecessors in interest used the waters of the spring for a useful purpose, and that he acquired the title subject to her rights, which is clearly expressed in the patent. The proof also shows that the contentions of the defendant are true, but it also shows that she has only used the water in the past (and does, and can only, use the waters flowing from the spring) for but four months of each year. The evidence is, however, clear that the spring, during the eight months of each year that she does not use the waters therefrom, nevertheless discharges a small quantity of water which can be used for culinary purposes by the plaintiff. True, the plaintiff, in seeking to make use of the waters for that purpose, undertakes to entirely exclude the defendant from making any use thereof. Now, the evidence discloses that on the 6th day of July, in the year 1916, the waters discharged from the spring amounted to about four gallons per minute. That was perhaps more than its normal flow, because the plaintiff had dug into the side of the mountain, and thereby had augmented the flow. From all the evidence it is made clear, however, that the flow from the spring for many years has been some amount (some years more, some years less), between the 1st day of September of one year and the 1st day of May in the following year. That is the period of low water, and it also is the period during which the evidence shows the defendant in the past had not used the waters, and, in consequence of the meager flow and the great distance that the spring is situated from her premises, she cannot make it available for use. The court, however, failed to make a finding in accordance with the evidence that the defendant's use of the waters

from the spring should be limited to the four months commencing May 1st and ending September 1st of each year, and also failed to so limit her rights in the decree. In so far as the findings extend the defendant's right to use the waters from said spring during the period of time aforesaid, they are not supported by the evidence, and in so far as the decree denies the plaintiff the right of the use of waters from said spring during the whole of the year, the decree, under the circumstances, is contrary to law. As between the plaintiff and the defendant, therefore, the findings and decree as they now exist cannot be sustained. As to them, therefore, the decree should be, and it accordingly is, reversed; and the cause is remanded to the district court of Utah County, with directions to make the findings of fact conform to the evidence in the following particulars: To make findings to the effect that the defendant has a prior right to the use of all of the waters from said spring from the 1st day of May to the 1st day of September of each year, and that during said period of time the plaintiff has no right whatever in or to the waters flowing from said spring or any part thereof; that from the 1st day of September in each year to the 1st day of May in the following year the plaintiff has the right to take and use so much of the waters of said spring as he may need for household or culinary purposes in his home. The court shall also enter a decree to the effect that in using the waters from said spring the plaintiff shall in no way interfere with said spring or do any act or thing by which the surface flow thereof or the underground seepage therefrom shall be diminished in quantity or quality during the period of time commencing May 1st and ending September 1st of each year. The court is also directed to modify any other part of the findings, conclusions of law, and decree that may be necessary to make them conform to the foregoing directions. In so far as the findings, conclusions of law, and decree conform to the foregoing modifications and directions as between the plaintiff and the defendant, they are approved and affirmed.

Plaintiff's counsel, however, also assail the findings and decree upon the ground that neither the quantity of the water that the defendant may use nor the amount of the land

that she may irrigate is definitely fixed in the findings or decree. In view, however, that the plaintiff in his complaint only claims the waters flowing from the spring, and in view that he in no event has any rights to the waters of said spring, except for the period of time and for the purpose before stated, he in no way is affected, much less prejudiced, by the matters last complained of, even though it were held that the findings and decree with respect thereto are too general, a matter on which, for the reason stated, we express no opinion.

Plaintiff, however, also vigorously assails the findings and decree in favor of the intervener. As to the rights of the intervener the court found:

"That the said intervener, both by its pleadings and also by stipulation made in open court, admits that the rights of the defendant are superior to the rights of the intervener in and to the waters of said 'Daniels' hollow,' and that, whenever the waters of said 'Daniels' hollow' are not more than sufficient to irrigate the portion of the lands of the defendant which she has heretofore irrigated from said hollow, then the defendant is entitled to turn all of the waters of said hollow upon her said lands for the beneficial irrigation thereof."

The decree follows the finding. We remark that in view of the state of the record we entertain serious doubts respecting our rights to review the assignments of error as against the intervener. For the reason, however, that in the findings and decree all the rights of the intervener are made subject to the rights of the defendant, and in view that during the period of time from September 1st to May 1st of the following year the intervener never has used, nor can use, the waters from said spring, and for the reason that plaintiff's right to the use of the waters of said spring are necessarily limited, as hereinbefore stated, and hence cannot be affected by said finding or decree, we express no opinion respecting our power to review the assignments against the intervener. If, as counsel contends, however, the decree in favor of the intervener in so far as it can possibly affect the plaintiff is void because not supported by the pleadings, then again the plaintiff cannot legally be affected or prejudiced thereby.

For the reasons stated, and to the extent indicated, the findings, conclusions of law, and decree are modified, and the cause is remanded to the district court of Utah County, with directions to make findings, conclusions of law, and enter a decree in conformity with the directions hereinbefore stated. Each party is required to pay his, her, or its own costs, as the case may be.

McCARTY, CORFMAN, and GIDEON, JJ., concur. THURMAN, J., not participating, disqualified.