**BLAUNER et al. v. HIRSCH et ux.**

**No. 5778.**

Circuit Court of Appeals, Sixth Circuit.

March 18, 1932.

Luther Day and W. C. Keough, both of Cleveland, Ohio (Bernard Hershkopf and I. Gainsburg, both of New York City, and Wm. C. Keough, of Cleveland, Ohio, on the brief), for appellants.

Chas. H. Sachs, of Pittsburgh, Pa., and E. R. Diehm, of Cleveland, Ohio (Sachs & Caplan, of Pittsburgh, Pa., and Klein & Diehm, of Cleveland, Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Paul Hirsch and Fannie W. Hirsch, husband and wife, residents of Ohio, filed the original petition in an Ohio court of common pleas against Guaranty Trust Company of New York, a New York corporation but doing business in Cleveland, the Hirsch Com-

pany, the Hirsch Improvement Company, Ohio corporations, and Julius and Isidore Blauner, residents and citizens of New York. The Guaranty Trust Company removed the case to the United States District Court.

The Hirsches and the Blauners were each owners of one-half of the capital stock of both the Hirsch Company and the Improvement Company. The Improvement Company is the original lessee of the business property known as the Argyle block on Euclid avenue in Cleveland. This lease is for ninety-nine years from April 6, 1915. The Improvement Company had sublet, for a shorter period, a portion of the property to the Hirsch Company. On March 24, 1924, the Improvement Company sublet the entire property to the McCrory Stores Corporation for the balance of the ninety-nine year term. The Hirsch sublease was canceled by mutual agreement, and the Hirsch Company went out of business.

For the purpose of ascertaining and discharging the debts of the Hirsch Company, the Hirsches, the Blauners, the Improvement Company, the Hirsch Company, and the Trust Company entered into an agreement wherein the Improvement Company assigned to the Trust Company, as trustee, all its interest in the McCrory lease. The Trust Company agreed to collect the income and profits due or to become due upon the lease and apply the same to the payment of (1) the rent due the original lessor; (2) all necessary expenses for the preservation of the lease; (3) all taxes; (4) all expenses of the trustee; (5) the creditors of the Hirsch Company; and (6) it was provided that the balance should be paid to Fannie W. Hirsch and the Blauners in the manner hereinafter indicated.

For the proper execution of the trust it was necessary that the creditors of the Hirsch Company be definitely ascertained and the just amount of their claims established. The Hirsch Company was indebted to the Blauners in the fixed sum of $200,000, which it specifically acknowledged in the agreement, and a lien was declared therein upon the lease assigned to the Trust Company to secure its payment in the manner provided by the contract. The Hirsch Company was also indebted to the Blauners in certain other sums. It was agreed that the business of the Hirsch Company should be wound up; that its assets should be reduced to cash and applied to the payment of its debts *"except the sum of $200,000.00 and that the creditors and the amount due and owing to them which shall remain unpaid after the application of its as-*

*sets thereto as aforesaid shall be determined from the books and records of said corporation by Nathan J. Levine who shall \* \* \* certify the same \* \* \* to the Guaranty Trust Company* upon which certificate the Trust Company may rely and which certificate shall be final and conclusive." It was further agreed that the trustee should apply the income from the property to the payment of creditors of the Hirsch Company *"including any and all indebtedness to Julius and Isidore Blauner over and above the indebtedness in the aforesaid sum of $200,000.00."* It was further agreed *"that after all the creditors of the Hirsch Company including the indebtedness to Julius Blauner and Isidore Blauner over and above the said fixed amount of $200,000.00 shall have been fully paid* the Trustee shall pay out of the rents, income and profits of said property, *one-half thereof to Julius and Isidore Blauner, which shall be applied on account of and in liquidation of the indebtedness due them in the aforesaid fixed sum of $200,000.00 until the full amount of said indebtedness is fully paid, satisfied and discharged; and one-half to Fannie W. Hirsch;* and after the said fixed sum of $200,000.00 shall have been fully paid the Trustee is hereby directed, authorized and empowered to pay the net income and profits of said property in the following manner: *One-half to Julius Blauner and Isidore Blauner \* \* : and the other half to Fannie W. Hirsch. \* \* \* "* [1]

The provision which allows Fannie W. Hirsch to enjoy one-half of the net profits of the lease while the other half is being appropriated to the satisfaction of the Blauner debt of $200,000 without any further provision for the equalization of profits between the parties excites curiosity, but is not of material importance, because the parties were competent to make this arrangement if they chose to do so.

There is no ambiguity in the agreement. It is manifest that the Blauners, in so far as their debt of $200,000 was concerned, were excluded not only from participation in the assets of the Hirsch Company, but from any share in the profits of the lease until all other creditors of the Hirsch Company had been paid. This $200,000 was excepted from the debts which Levine was authorized to certify. He had no authority to certify any claim except such as remained unsatisfied after the claimant had participated in the assets of the Hirsch Company. He, however, not only included this $200,000 debt to the

---

[1] All the foregoing italics ours.

Blauners in the certificate, but, without even color of authority, added interest thereto at the rate of 6 per cent. from its date. He likewise improperly included an item of $16,000 for an attorney fee. It is clear that he was not an arbitrator. This item was not to be found on "the books and records of said" [Hirsch] "corporation." If the Levine certificate stands uncorrected, the result will be that the payment of any of the net income from the lease to appellee Fannie W. Hirsch will be postponed not only until after all the creditors of the Hirsch Company have been fully paid, according to the agreement, but until after the debt of $200,000 to the Blauners with its accrued interest and the attorney fee of $16,000 have also been paid. The court in virtue of its inherent power corrected the certificate and there is no error in its decree if the Blauners were properly before the court.

The Blauners, residents of New York, were not personally served with process. The service was by publication sanctioned by the General Code of Ohio, § 11292.[2] The Blauners appeared solely for the purpose of challenging the jurisdiction of the court, and moved to set aside this constructive service. The court overruled the motion, and we find no error therein.

The gravamen of the motion is that the action was *in personam* and that in such case nothing but personal service will bind a nonresident defendant. Appellants rely, of course, upon Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. We cannot assent. Appellees made no money demand against the Blauners. They sought neither personal judgments nor compulsory relief against them. The object of the bill was to correct the Levine certificate and to remove a cloud upon appellees' rights in the trust fund. This fund was built from the net rentals of the Argyle block under the McCrory lease. These rentals, like all rentals from real estate, issued out of and were incidental to the property. The bill simply sought by direct de-

cree a proper distribution of the rental funds among those legally and equitably entitled thereto. This was not difficult of accomplishment. The Argyle block was within the jurisdiction of the court, and its rentals were within easy reach. If necessary to the object sought to be accomplished, both could have been readily brought under the direct control of the court by appropriate action. We think therefore that the case was, to say the lease, "in the nature of a proceeding *in rem*." Pennoyer v. Neff, supra, 95 U. S. 723, 24 L. Ed. 565. See, also, Dennison Brick & Tile Co. v. Chicago Trust Co., 286 F. 818 (C. C. A. 6); National Surety Co. v. Austin Machinery Corp., 35 F.(2d) 842, 843 (C. C. A. 6); Bennett v. Fenton (C. C.) 41 F. 283, 285, 10 L. R. A. 500; Amparo Min. Co. v. Fidelity Trust Co., 74 N. J. Eq. 197, 71 A. 605.

From another viewpoint we think the jurisdiction was ample. The trustee was properly in court and the trust res was within its local jurisdiction. This was all that was necessary to give the court authority to determine the relative rights of the parties, as between residents and nonresidents, in the trust res, and to control the disposition thereof by the trustee.

In Minot v. Tilton, 64 N. H. 374, 10 A. 682, it was held that the determination of the relative rights of parties to a trust fund on a bill in equity brought for that purpose will bind a nonresident interested in the fund though he had no notice of the proceeding except by publication. See, also, Goodman v. Niblack, 102 U. S. 556, 563, 26 L. Ed. 229; Hamilton v. Young, 285 F. 223, 225 (C. C. A. 5); Bennett v. Fenton, supra, 283 of 41 F.; Smith v. Smith, 123 Minn. 431, 144 N. W. 138, 52 L. R. A. (N. S.) 1061.

Without further discussion we conclude that appellees' cause of action falls within the statute in question; that the suit related to property within the state in which the Blauners claimed an actual interest and upon which they had a specific lien. In such case the state provided that publication should be sufficient to impart notice to nonresident parties. The method adopted was not unreasonable and is binding upon us. Arndt v. Griggs, 134 U. S. 316, 321, 10 S. Ct. 557, 33 L. Ed. 918; Porter Land & Water Co. v. Baskin, 43 F. 323, 327 (C. C.).

The decree of the District Court is affirmed.

---

[2] "Service may be made by publication in any of the following cases:  *  *  *

"9. In an action which relates to or the subject of which is real or personal property in this state, when the defendant has or claims a lien thereon, or an actual or contingent interest therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is not a resident of this state, or is a foreign corporation, or his place of residence can not be ascertained."