**ALBION–IDAHO LAND CO. v. NAF IRR. CO. et al.**

No. 1591.

Circuit Court of Appeals, Tenth Circuit.

June 3, 1938.

Branch Bird, of Gooding, Idaho (W. G. Bissell, of Gooding, Idaho, on the brief), for appellant.

A. E. Bowen, of Salt Lake City, Utah (S. J. Quinney and Albert R. Bowen, both of Salt Lake City, Utah, on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

Clear Creek is an interstate, nonnavigable mountain stream having its source in the Raft River Mountains of Utah and flowing northerly into Idaho to its confluence with Raft River about 15 miles north of the Utah-Idaho boundary line.

The Albion-Idaho Land Company, hereinafter referred to as the Land Company, is a corporation organized under the laws of California. It owns 2400 acres of land in Cassia County, Idaho, with water rights from Clear Creek appurtenant thereto for the irrigation of portions thereof.

The Land Company brought this suit against the Naf Irrigation Company and certain owners of lands all situated in Box Elder County, Utah, with the exception of a tract of 160 acres situated in Cassia County, Idaho. The defendants are the owners of water rights from Clear Creek appurtenant to such lands for the irrigation thereof. All of their points of diversion are located in Box Elder County, Utah. After the suit was commenced five owners of land in Cassia County, Idaho, intervened. The lands of the defendants and their points of diversion are situated higher on the stream than those of the Land Company and the interveners. The defendants will herein-

after be referred to collectively as the upper group and the Land Company and the interveners collectively as the lower group.

In its complaint the Land Company alleged that it is the owner of certain lands in Cassia County, Idaho; that it had acquired by diversion and application to beneficial use the right to use water from Clear Creek for agricultural purposes upon such land prior in time and superior in right to any water rights of the defendants, and that the defendants had made wrongful and unlawful diversions of the waters of Clear Creek during the irrigation seasons of 1928, 1929, 1930, and 1931, to the detriment of the Land Company. The Land Company set out certain decrees adjudicating the priorities and amounts of the Land Company's water rights. It prayed for an injunction against the defendants restraining them from "interfering with the waters of * * * Clear Creek or diverting waters therefrom for irrigation or any other purpose * * * except at such times as the rights of the plaintiff * * * are being supplied in full," and for the appointment of a water master to administer the waters of the stream.

Each intervener set up that he is the owner of certain land in Cassia County, Idaho; that he had acquired by diversion and application to beneficial use the right to use water from Clear Creek for irrigation purposes upon such land prior in time and superior in right to any water rights of the defendants, and that the defendants had made wrongful and unlawful diversions of the waters of Clear Creek during the seasons of 1928, 1929, 1930, and 1931. The interveners prayed for substantially the same relief as the Land Company.

In their answers the defendants denied the essential allegations of the complaint and the petitions in intervention and affirmatively alleged water rights of their own acquired by diversion and application to beneficial use by them and their predecessors, prior in time and superior in right to the water rights of the Land Company and interveners. Defendants also pleaded as special defenses the statute of limitations, adverse user, and nonuser by the Land Company and interveners.

The cause came on for trial upon the issues so framed. The parties entered into a stipulation as to the respective lands owned by each.

Certain oral evidence was introduced in support of the alleged claims of water rights

of the several parties. The Land Company and interveners introduced in evidence a decree known as the Dietrich decree, rendered by the District Court of the United States for the District of Idaho on October 18, 1919. It adjudicated the water rights of the lower group and established their several priorities. The defendants and their predecessors in interest were strangers to the Dietrich decree. The Land Company introduced in evidence a decree known as the Christensen decree rendered by the district court of Box Elder County, Utah, on November 18, 1918, which adjudicated the waters rights of the upper group and established their several priorities. The Land Company and the interveners were strangers to the Christensen decree. The Land Company introduced a decree known as the Hart decree rendered by the district court of Box Elder County, Utah, on July 11, 1901. The predecessors in interest of the Land Company and the predecessors in interest of a portion of the defendants were parties to the suit in which the Hart decree was rendered. By the Hart decree the court undertook to adjudicate the water rights of all the users of water from Clear Creek and to establish their several priorities. Each decree was received in evidence over objection of the defendants.

■ The statement of the evidence brought here omits much of the oral evidence introduced at the trial. Hence, we must accord verity to the facts as set forth in the written opinion of the trial court and in its formal findings of fact.

In the trial court's opinion these facts are set forth:

Clear Creek is a characteristic mountain stream. Its highwater period occurs in the spring and early summer when its flow sometimes reaches 180 second feet. During the remainder of the year it draws its water solely from springs along its course and flowing water is found only in its upper reaches and there in insignificant quantity.

In the late '70's or early '80's of the nineteenth century, pioneers settled along the stream and began to make use of its waters for irrigation. There were two groups of these settlers, one locating near the mouth of Clear Creek Canyon in what is now the state of Utah, and the other in the valley of Clear Creek and Raft River in what is now the state of Idaho.

The lands first taken up by the Idaho settlers, predecessors of the lower group, were natural meadows of an area of approximately 1000 acres which were irrigated by overflow from the stream. To more completely irrigate these meadow lands the predecessors of the lower group made a few short ditches and constructed temporary dams in the stream. Shortly thereafter the predecessors of the lower group began to sow tame grasses, including alfalfa, and increased the area irrigated by building new ditches, extending old ditches, and constructing more temporary dams in the stream. The evidence leaves the amount of the increase and the location of the early diversion dams uncertain.

About the time the predecessors of the lower group began to utilize the meadow lands, the predecessors of the upper group in Utah began to utilize the waters of Clear Creek for irrigation of their lands.

All of the early settlers were stock raisers and were primarily interested in producing grass for pasturage and hay for feeding livestock.

The lands in Utah were rough and more precipitous than those in Idaho and the predecessors of the upper group in Utah of necessity constructed more permanent diversion dams and longer ditches. At an early date they irrigated grasses for pasturage and hay on 1280 acres of land.

During this early period one John Naf settled on what is now known as the John Naf Ranch in Idaho, embracing 160 acres of land, the northern boundary line of which is coincident with the Utah-Idaho boundary line, and began to irrigate such land for pasturage and hay. The Naf Ranch is included in the upper group.

During the earlier days there was apparently sufficient water for all the users. In more recent years the waters of the stream have been used for producing crops other than grass and hay by both the upper and lower groups, and the acreage has been increased from time to time so that the demand for water now exceeds what the stream will supply. This shortage was accentuated due to an extraordinary period of drouth in the years 1926 to 1936, inclusive.

Until a certain quantity of flow is reached as the stream rises in the spring and after the stream decreases to or below a certain quantity of flow in early summer,

the waters of the stream will not reach the lower users in sufficient quantity to afford a practical head for irrigation purposes. In the period between these two minimums the waters may be used advantageously by both the upper and the lower groups. Hence, it is desirable to so rotate the use of the waters of the stream so that the maximum amount can be diverted to the land for irrigation by the several users and the waste of water prevented.

The trial court concluded that on the evidence before it, it could not make a just and equitable decree without further studies being made of the stream. Accordingly, on March 28, 1933, with the consent of the parties, the trial court entered an order appointing the Commissioner of Reclamation of the state of Idaho and the State Engineer of the state of Utah as commissioners to supervise the distribution of the waters of Clear Creek during the 1933 irrigation season, to determine the flow of the stream at its various stages, to ascertain at what stages, if any, the waters of the stream would not flow in sufficient amount to provide a practical head for irrigation on the lands of the lower group, and to make studies of the stream and the lands irrigated therefrom and report to the court means and methods to effect the most economical and beneficial use and distribution of the waters of the stream.

Pursuant to such order, and extensions thereof made with the consent of the parties, the commissioners distributed the waters of the stream for the years 1933 to 1936, inclusive. They made annual reports for the years 1933, 1934, and 1935, and on January 7, 1937, made their final report. Thereafter a hearing was had on the reports and the trial court made findings of fact from which these facts appear:

Clear Creek is a flashy and torrential mountain stream subject to violent fluctuations that are not uniform from year to year. Between the first day of October and the first day of April of each year the amount of water flowing in the stream is insignificant. The stream generally reaches its maximum flow in May or June and after reaching the maximum rapidly diminishes until the water recedes to a very small volume.

The commissioners established a measuring point known as the U. S. G. S. gauging station located above all the diversions from the stream, except two small ditches which supply primary rights totaling .83 of a second foot.

The losses by seepage, evaporation, and channel absorption between such gauging station and the point of diversion of the Land Company in Idaho range from 17 to 20 second feet. Such losses are greater during the rising periods of the stream than during its receding periods. Until the waters flowing in the stream rise to a volume of 20 second feet at the gauging station due to such losses the waters do not reach the lower group in sufficient quantities to afford a practical head for irrigation, and after the waters flowing in the stream recede to 17 second feet at such gauging station owing to such losses the waters do not reach the lower group in sufficient quantities to afford a practical head for irrigation.

In order to effect the greatest utilization of the waters of Clear Creek and prevent waste thereof, it is necessary to divide the lands irrigated therefrom into two divisions, the upper division comprising the lands of the upper group situated in Utah and the Naf Ranch [1] situated immediately below the Utah-Idaho boundary line, and the lower division comprising the lands of the lower group situated in Idaho. The lands comprising the upper division constitute approximately 43 per cent and the lands comprising the lower division constitute approximately 57 per cent of the total lands irrigated from the stream.

The trial court made specific findings as to how the waters should be divided between the upper and lower divisions and entered its decree accordingly.

The report of the commissioners shows 864 acres irrigated in the upper division under priorities ranging from 1878 to 1893 and 1120 acres irrigated in the lower division under priorities ranging from 1881 to 1897.

The decree adjudges and decrees:

That the rights of Phillip Ospital and of Naf Irrigation Company to .83 of a second foot are primary rights and that they shall be entitled to receive that amount of water at all times they can beneficially apply it.

That for the purpose of distributing the

---

[1] The point of diversion and a portion of the ditches which supply the Naf Ranch are located in the state of Utah.

waters of Clear Creek the lands irrigated therefrom shall be divided into two divisions. That the upper division shall comprise all of the lands in the state of Utah and the Naf Ranch and the lower division shall comprise all of the other lands in the state of Idaho.

That an automatic measuring device shall be installed either under the supervision of the United States Geological Survey or the Commissioner of Reclamation of the state of Idaho and the State Engineer of the state of Utah at the point designated in the findings; that the expense of installing same shall be borne 43 per cent by the upper division and 57 per cent by the lower division.

That at the beginning of each year the users in the upper division shall be permitted to divert all the waters of Clear Creek until the flow thereof at the gauging station, including the primary rights, averages 20 second feet or more for a period of 24 hours; that when the average flow of the stream equals 20 second feet or more for a period of 24 hours all the waters of the stream, excepting such primary rights, shall be diverted by the users in the lower division until they shall have received 560 acre feet measured at their respective points of diversion. That after the users in the lower division shall have received 560 acre feet, if the daily average flow, including the primary rights, shall continue to exceed 17 second feet the waters flowing in the stream shall be divided on the basis of 43 per cent to the upper division and 57 per cent to the lower division measured at the respective points of diversion; that this division shall continue until 750 additional acre feet shall have been diverted and shall further continue on the same basis during all periods when the total diversions exceed 37.2 second feet. That after the lower division shall have diverted 560 acre feet and 750 additional acre feet shall have been diverted by the upper and lower divisions, then during those periods when the total diversions are less than 36.2 second feet and the average daily flow at the gauging station, including the primary rights, shall be 17 second feet or more, all of the flow, except the primary rights, shall go to the lower division for an additional period of 12 days. That thereafter the division shall be made on the basis of 43 per cent to the upper division and 57 per cent to the lower division at all times when the daily average flow at the gauging station shall exceed 17 second feet, inclusive of the primary rights. Provided, that at all times when the daily average flow at the gauging station, including the primary rights, shall be less than 17 second feet, the entire flow shall go to the upper division.

That each user of water from Clear Creek shall construct and maintain at his own expense at his point of diversion a measuring device, those in Idaho to be approved by the Commissioner of Reclamation of the state of Idaho and those in Utah by the State Engineer of the state of Utah.

■ Since an early day the arid states doctrine of prior appropriation and application to beneficial use has been recognized in Utah and Idaho. The common law rule respecting riparian rights in flowing water never obtained in these states. The earliest settlers gave effect to a different rule whereby the waters of the streams were regarded as open to appropriation for irrigation, mining, and other beneficial purposes. As between different appropriations from the same stream, the first in time is deemed superior in right. This doctrine of appropriation prompted by necessity and formulated by custom received early legislative recognition in Idaho and Utah.[2]

■ The doctrine of prior appropriation applies to an interstate stream if all the states in which appropriations are involved, recognize the doctrine.[3]

[2] Sarret v. Hunter, 32 Idaho 536, 185 P. 1072, 1074; Hutchinson v. Watson Slough Ditch Co., 16 Idaho 484, 101 P. 1059, 1061, 1062; Brose v. Board of Directors of Nampa & Meridian Irr. Dist., 20 Idaho 281, 118 P. 504, 505; Crane Falls Power & Irr. Co. v. Snake River Irr. Co., 24 Idaho 63, 133 P. 655, 661; Constitution of Idaho, Art. 15, § 3; Brady v. McGonagle, 57 Utah 424, 195 P. 188, 190, 191; Gunnison Irr. Co. v. Gunnison Highland Canal Co., 52 Utah 347, 174 P. 852, 854; R.S.Utah, 1933, 100-3-21.

[3] Wyoming v. Colorado, 259 U.S. 419, 470, 42 S.Ct. 552, 66 L.Ed. 999; Conant v. Deep Creek & Curlew Valley Irr. Co., 23 Utah 627, 631, 66 P. 188, 90 Am.St. Rep. 721; Taylor v. Hulett, 15 Idaho 265, 271, 97 P. 37, 19 L.R.A.,N.S., 535; Morris v. Bean, C.C.Mont., 146 F. 423; Bean v. Morris, 9 Cir., 159 F. 651.

 It is contrary to the public policy of both Idaho and Utah to permit the waste of water.[4]

The major contention of the Land Company is that the trial court failed to apply the doctrine of prior appropriation . and sought to substitute therefor what it considered a fair and equitable distribution of the waters of Clear Creek among the several users.

To support its claim of priority the Land Company relies primarily upon the decrees introduced in evidence by it.

 It is well settled that with certain exceptions strangers to a judgment or decree are not bound thereby. An exception is recognized in the case of judgments strictly in rem.[5] The exception, however, does not apply to judgments in proceedings quasi in rem like suits to quiet title or to adjudicate water rights.[6] The defendants were not parties to the Dietrich decree and are not bound thereby. The Land Company and interveners were not parties to the Christensen decree and are not bound thereby.

 A suit to adjudicate water rights is a local action. The Hart decree undertook to adjudicate water rights beyond the jurisdiction of the court and was void on its face.[7]

 Since the decrees are not binding on the parties in the instant case who were strangers thereto and all of the evidence respecting priorities is not before the court, we must presume that the trial court in dividing the waters of the stream between the upper and lower groups gave due recognition to the priorities of the users in such groups. Where a record does not contain all of the evidence adduced, the appellate court will presume any conceivable state of facts within the scope of the pleadings and not inconsistent with the record which will sustain and support the decision below.[8]

 While ordinarily a prior appropriator has a paramount right to divert water from the stream and a junior appropriator may not divert water unless the waters flowing in the stream are in excess of the amount which the prior appropriator has the right to divert, if, due to seepage, evaporation, and channel absorption or other physical conditions beyond the control of the appropriators, the water flowing in the stream will not reach the diversion point of the prior appropriator in sufficient quantity for him to apply it to beneficial use, then a junior appropriator whose diversion point is higher on the stream may divert the water. The paramount right of the prior appropriator does not justify him in insisting that the water be wasted and lost by denying its use to the junior appropriator under such circumstances.[9]

 Since, due to seepage, evaporation,

---

[4] State v. Twin Falls Canal Co., 21 Idaho 410, 121 P. 1039, 1045, L.R.A. 1916F, 236; Big Cottonwood Tanner Ditch Co. v. Shurtliff, 49 Utah 569, 164 P. 856, 860, 861.

[5] Pitman v. Commissioner, 10 Cir., 64 F.2d 740, 742; In re Bloom's Estate, 213 Cal. 575, 2 P.2d 753, 755; Goodrich v. Ferris, 214 U.S. 71, 80, 81, 29 S.Ct. 580, 53 L.Ed. 914.

[6] Mays v. District Court, 34 Idaho 200, 200 P. 115, 116; Virginia & West Virginia Coal Co. v. Charles, D.C.W.Va., 251 F. 83, 114, 115; Bennett v. Fenton, C.C. Minn., 41 F. 283, 10 L.R.A. 500; Freeman on Judgments, 5th Ed., Vol. 3, §§ 1517, 1519, 1521, 1524. In Mays v. District Court, supra, the court said (page 116): "No person may be deprived of his property without due process of law. Const. art. 1, § 13. Due process of law requires that one be heard before his rights are adjudged. Cooley's Const. Lim. p. 506. Except for that limited class of actions which are strictly in rem, a decree is not, and cannot be made, conclusive, as to parties who are strangers to it. 15 R.L.C.Judgments, § 481, p. 1006; 12 C.J.Const.Law, § 1003, p. 1227; Ray v. Norseworthy, 23 Wall. 128, 23 L.Ed. 116; In re Sharp, 15 Idaho 120, 96 P. 563, 18 L.R.A.,N.S., 886. The same principle applies to decrees rendered in proceedings to adjudicate rights to the use of water, they not being strictly in rem. Stocker v. Kirtley, 6 Idaho 795, 59 P. 891; Josslyn v. Daly, 15 Idaho 137, at page 146, 96 P. 568; Frost v. Idaho Irr. Co., 19 Idaho 372, 114 P. 38; Lambrix v. Frazier, 31 Idaho 382, 171 P. 1134; 2 Wiel, Water Rights (3d Ed.) § 1233, p. 1137."

[7] R.S.Utah, 1933, 104-4-1; Conant v. Deep Creek & Curlew Val. Irr. Co., 23 Utah 627, 66 P. 188, 90 Am.St.Rep. 721; Rickey Land & Cattle Co. v. Miller & Lux, 9 Cir., 152 F. 11, 14, 15, affirmed 218 U.S. 258, 31 S.Ct. 11, 54 L.Ed. 1032.

[8] Raad v. Grant, 43 N.D. 546, 169 N.W. 588, 590; Providence v. Babcock, 3 Wall. 240, 244, 18 L.Ed. 31; Cooper v. Dasher, 290 U.S. 106, 108, 54 S.Ct. 6, 78 L.Ed. 203.

[9] Fenstermaker v. Jorgensen, 53 Utah

and channel absorption, water flowing in the stream, when the average flow is below the minimums fixed by the decree of 20 and 17 second feet, respectively, will not reach the Land Company and other users in the lower division in sufficient quantities to afford a practical head for irrigation, the trial court properly awarded the waters to the upper division during the times the flow at the gauging station was below such minimums even if it be assumed that the rights of the users in the upper division were junior in right to those in the lower division.

When the volume of the flow in the stream is sufficient to reach the diversion points in the lower division and afford the users in that division a practical head for irrigation purposes, the decree awards the users in that division a priority to the extent of 560 acre feet, except as to the two primary rights of .83 second feet.

Thereafter the decree divides the water on the basis of acreage in the two divisions until 750 acre feet additional have been diverted and thereafter so long as the diversions exceed 37.2 second feet. When the flow falls below 36.2 second feet and still continues in sufficient volume to reach the diversion points in the lower division and there afford a practical head for irrigation, the decree gives 12 additional days' flow to the lower division. After such additional 12 days' flow has been received by the lower division the decree again divides the water on the basis of acreage.

The trial court did not undertake and indeed had no jurisdiction to adjudicate the several priorities of the users on the stream, since the points of diversion and the lands irrigated from the stream of the lower group are situated in the state of Idaho and beyond the territorial jurisdiction of the court.[10]

The sole province of the trial court was to divide the waters between the users in the state of Utah and the users in the state of Idaho, and leave the division of the waters among the several users in the upper group to the state court decree to which they were parties and among the several users in the lower group to the federal court decree to which they were parties. While in so doing it was the duty of the trial court to recognize the several priorities we cannot say from the evidence before us and the findings that the decree did not fully recognize the priorities of the several users on the stream.

Rather, we are of the opinion that the trial court is entitled to commendation for the thorough and painstaking manner in which it inquired into and ascertained the relevant facts and for working out a very practical plan for a division of the waters of the stream whereby the priorities of the several users are fully recognized, waste is eliminated, and the greatest possible utilization of the waters of the stream is effected.

Let the decree be affirmed and the costs assessed against the Land Company.

Affirmed.

---

325, 178 P. 760, 763; Cleary v. Daniels, 50 Utah 494, 167 P. 820, 823; Dern v. Tanner, D.C.Mont., 60 F.2d 626, 628; Washington v. Oregon, 297 U.S. 517, 522, 523, 56 S.Ct. 540, 542, 80 L.Ed. 837.

10 28 U.S.C.A. §§ 113–116; Vineyard Land & Stock Co. v. Twin Falls S.R.L. & W. Co., 9 Cir., 245 F. 9, 25, 26;

Northern Indiana R. R. Co. v. Michigan Central R. R. Co., 15 How. 233, 56 U. S. 233, 241, 242, 14 L.Ed. 674; Matarazzo v. Hustis, D.C.N.Y., 256 F. 882, 886; Massie v. Watts, 6 Cranch 148, 10 U.S. 148, 157, 3 L.Ed. 181; see, also, cases cited in note 7.